Rathmell, J.
In this action it is sought to enjoin the defendant, Gilfillan, from presenting any, vouchers to the auditor of this county on account of compensation claimed by him under certain contracts mentioned in the petition; the auditor, L. Ewing Jones, from issuing to him any warrants on account of such compensation so claimed; and the treasurer, Bowland, from paying any such warrants; that certain acts of the General Assembly described in the petition be declared unconstitutional; the contracts illegal and void; and that relator may be granted such other relief as he may be entitled to in equity and law.
The petition avers that the county commissioners, the county auditor and the county treasurer, entered into certain contracts with the defendant, Gilfillan, on the dates respectively, January 22d, 1897, January 26th, 1900, and December 24th, 1902, providing that said defendant, for certain percentages therein mentioned, should search for real and personal property subject to taxation which the owners thereof have neglected to list for taxation, and to furnish the auditor such evidence as will authorize an examination of such owners as to such property and to subject same to taxation.
That the defendant, Gilfillan, now claims under 'services alleged,, to have been rendered by virtue of such contracts that he *155 is entitled to receive the stipulated percentages on any taxes on property so improperly omitted from the duplicate whenever such taxes will have been paid into the treasury; and will when so paid present vouchers for such compensation.
I. It is averred that the several contracts were drawn and executed in accordance with Sections 1343a and 13435; or in accordance with 1343-1, 1343-2, 1343-3 and 1343-4 of the Revised Statutes of Ohio, and are illegal and void and not authorized by any valid statute; that Sections 1343a and 13435 of the Revised Statutes of the act of the General Assembly passed April 23d, 1884, are void, being repugnant to Section 26, Article II of the Constitution of the state, which provides that “all laws of a general nature shall have a uniform operation throughout the state.”
The Supreme Court of the state has made expression that the character of a law as general or local depends on the character of the subject-matter. That when the subject of legislation is a matter of general concern to the state and' to every county in the state and to the inhabitants thereof, it is o&'general nature (Kelley v. The State, 6 O. S., 271, 272; State, ex rel Guilbert, v. Yates, 66 O. S., 546, 548).
The subject of this law, the employment of persons to discover property improperly omitted from the tax duplicate, is plainly one which may exist in, concern and affect the people of every county in the state. The fact that the General Assembly has, by two enactments, similar in substance, on this subject, covered the territory of the state, would seem to be conclusive that, in its view, the subject was one of general nature.
The explicit language of Section 1343a leaves no room for doubt as 'to the scope and operation intended to be given to the act of April 23d, 1885. It was limited to counties of the state containing a city of the first class, and cities of the first grade of the second class. Under existing legislation at the time of its enactment the legislative intent that its operation was not to be uniform throughout the state is apparent. The conclusion follows that said sections contravene that provision of the Constitution, and are, therefore, invalid.
*156 2. The law of April 10th, 1888, and numbered Sections 1343-1, 1343-2, 1343-3 and 1343-4 of the Revised Statutes is challenged on the same ground. In State, ex rel, v. Crites, 48 O. S., 142, this law was under consideration by the Supreme Court and pronounced constitutional.
Counsel for relator silggest that the objection now raised in opposition to the act (Section 26, Article II of the Constitution) was not passed on in that case. But counsel for the defendants contend that the law is not repugnant to that provision. That if the act of 1885 (Sections 1343a and 13436) was not a proper subject for local legislation (as we have held) then the enactment was void and the uniform operation of the act of 1888 was secured.
The rule is well established that part of a statute may be unconstitutional and void and another part valid, if what remains is complete in itself and capable of being enforced according t-o legislative intent, independent of that which is rejected (Presses v. Illinois, 116 U. S., 252; Treasurer v. Bank, 47 O. S., 523, authority for the proposition).
The. enacting clauses of the act of 1888 are general in their terms, applying to “any county,” “any assessor,” etc. But Section 1343-4 contains the language:
“This act shall not in any manner affect the provisions of Sections 1343a and 13436 as enacted April 20th, 1885 (82 O. L., v. 152).”
Will striking out this language give the act a broader scope as to subject or territory than the General Assembly intended? The answer to this question will be determined by the construction given to Section 1343-4, i. e., whether it amounts to a limitation or an exception.
In State, ex rel, Wilmol, v. Buckley, 60 O. S., 296, the court, speaking through Burket, J., said:
“There is a difference between an exception and a limitation. When a statute upon a subject of a general nature is made to extend to the whole state in one part thereof, and then in another part an attempt is made to limit its operation to, territory less than the state, the limitation may be disregarded; because to give it effect would render the whole statute uneonstitu *157 tional; and such construction should be given when reasonable as will uphold the statute rather than one which would defeat it.”
We incline to the view that this principle of construction finds application here.
It is the purpose of the state that all property subject to taxation shall be ecpially taxed. The general purpose of the Legislature as appears by all the acts on this subject was to afford means whereby property which has escaped taxation might be brought upon the duplicate:
Is the limitation in this Section 1343-4 of the act so essentially and inseparably connected with, or so interdependent upon the rest of the act, that it can reasonably be claimed that the General Assembly would not have enacted the one without the other? I do not so conclude. If there is any doubt about it, such doubt should be resolved in favor of the law. (Wilson v. Gilson, 1 N. P.—N. S., 565; State v. Kendle, 52 O. S., 346, 356; Gilpin v. Williams, 25 O. S., 283, 294; State v. Frame, 39 O. S., 399, 416).
In view of the constitutional approval which the Supreme Court gave this act of April, 1888, in the Crites ease, supra; and .considering that the statute is upon a subject of general nature, and made, in the enacting clause, general in its scope; and viewing the matter of Section 1343-4 as an attempt to limit its operation to territory less than the state, the limitation will be disregarded, and the statute upheld.
3. It is further contended that the act of April 10, 1888, is in conflict with Section 1, Article X of the Constitution. That the duties which defendant, Gilfillan, is discharging as tax inquisitor are duties of a county officer, and, therefore, he must be elected.
The courts have declared that the distinguishing characteristic of a public.officer is that the incumbent in an independent capacity is clothed with some part of the sovereignty of the state to be exercised in the interest of the public as required by law; that he is not a mere employe; that the tenure and position of the officer is of a continuous character as opposed *158 to a temporary employment; or employment for a definite and particular purpose. (State, ex rel Armstrong, v. Halliday, 61 O. S., 171, 172; State, ex rel Atty.-Genl., v. Jennings, 57 O. S., 415, 426; 1 N. P.—N. S., 565).
The work imposed upon the person to be employed by the officers mentioned in the statute is “to make inquiry and furnish the auditor the facts as to any omissions of property for taxation and the evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate.” He is an employe. He is an aid to the taxing officer. His duties arise out of contract; and his employment is dependent for its duration, its extent and character, upon the tenns of the contract, and is for a definite and particular purpose.
“The power of the Legislature,” says Minshall, J., in State v. Kendle, 52 O. S., 356, “to provide for the appointment of persons to act as assistants in an office filled by election has not and can not well be questioned.”
A similar question was under consideration in the case of State, ex rel Wilson, v. Gibson, 1 N. P.—N. S., 565, which was affirmed by the Supreme Court, February 16, 1904, and holding adverse to the claim of the relator in this case. It seems to me that the question comes within the principle decided in that ease and is not in conflict with Section 1, Article X of the Constitution.
4. Our conclusion reached as to the validity of Section 1343a and 1343& makes it unnecessary to consider the question made as to the repugnancy of those sections, to Section 1, Article XIY of the amendments to the Constitution of the United States.
5. It is further claimed that the said several contracts are respectively unauthórized, illegal and void for the reasons:
(1) That they stipulate for percentage on all money paid into the county treasury as taxes on improperly omitted real estate which the inquisitor may claim to have discovered and procured to be returned for taxation.
*159 The claim is made that the statute does not authorize employment with respect to omitted real estate. That payment is limited to omitted personal property.
■The petition recites that under the contract of January 26, 1900, the defendant, Gilfillan, claims to have furnished information on October 5th, 1900, to the auditor upon which the. auditor entered upon the omitted tax duplicate, on account of real property improperly omitted from the duplicate, in the name of Alice Gollins (valuation $800), for the years 1895 to 1900, on which said defendant claims compensation at the rate mentioned in the contract, $27.26. And a like claim of $4.95 for information furnished the auditor upon which he entered taxes on real property of Peter Freibus, for the year 1904, valuation $1,650.
A contract made in pursuance of a statute must be construed as though such statute had been incorporated into such contract; and this is so whether such law affects its validity, construction, discharge or enforcement. (Banks v. DeWitt, 42 O. S. 263; Holbrook v. Ives, 44 O. S., 516, 524; Compton v. Ry. Co., 45 O. S., 592, 619.)
It is a fundamental principle of construction that effect must be given to the intent of the Legislature, and where that intent is plainly expressed the language must be taken in its plain and ordinary signification. But where the court is confronted with an ambiguity, or an absurdity would arise from giving the language its ordinary meaning, the rules of construction are invoked to ascertain the true legislative intent. (23 A. & E. Ency. of Law, 412.)
The authority of the statute is, “to employ any person to make inquiry and furnish the county auditor the facts as to any omissions of property for taxation and the evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate.”
What is the scope of the inquest, the plain and ordinary signification of the language “any property,” “any omissions of property,” “a full return of property” used in the statute?
The court in the Crites case said that—
*160 “The statute (85 O. L., 170) must be regarded as part of the general plan by which the constitutional rule that all property subject to taxation is to be equally taxed may be enforced. ’ ’
The title to the act of 1880 (77 O. L., 205) where the language conferring the power to employ the tax inquisitor and that which designates the property with respect to which he might act, is substantially the same as that in the act under consideration, recites: “An act to more fully secure the taxation of real and personal property,” etc.
The title to the present act is: “ To secure a fuller and better return of properly for taxation, and prevent omissions of property from the tax duplicate.” If the Legislature has changed its intent as to the scope of the inquest of real and personal omitted property since the act of 1880, it has not so indicated such change of intent, in its retention and use of general terms applicable to both kinds of property in the present act.
In State, ex rel Deckenbach, v. Hagerty, 5 C. C., 325, 328, the court, considering the object, purpose and evil sought to be corrected by 1343a, was of the opinion that the language “impropeidy omitted property” should be held to include the case where a part of the valuation of real property on the duplicate had been improperly omitted therefrom. By so much the more would such language include a ease where real property is entirely omitted. But it is the contention of relator that the language: “And such compensation shall not exceed 20 per cent, of the amount of such taxes on the returns of omitted moneys, credits, investments in bonds, stocks, joint stocks, annuities or other valuable interests,” limits payment to taxes on the inquest of personal property. That the phrase “other valuable interests” under the doctrine noscitur a sociis refers ■to the same kind of property as the words and phrases preceding it.
Said Section 1343a contains a provision for payment, but has no express limitation of compensation by certain percentages corresponding to the clause under consideration in Section J343-1. It is observable, however, that the same general terms *161 relating to property improperly omitted and payment, used in 1343a_and which have been held to include a case of quest of real property, are used in 1343-1 down to the percentage clause. Tn my judgment the effect of the language of said percentage clause in Section 1343-1, is to limit the payment on quest of personal property to 20 per cent., but that it is not decisive of, or prohibitive of the right to contract for quest of omitted realty. It has not been contended or suggested that the discovery of omitted realty is not as advantageous to the public as that of omitted personalty. And viewing the statute as a part of the plan to aid in subjecting all taxable property to equal taxation together with its history, and the plain and ordinary signification of the terms, “any property,” “a full return of property,” “any omissions of property” employed therein, I am of the opinion that the several contracts in stipulating payment for information necessary to authorize the auditor to subject to taxation improperly omitted real property were not unauthorized.
(2) That the contracts are illegal because they severally stipulate for payment of percentage on penalties added by the auditor to improperly-omitted property through his,, efforts and to which a penalty may be added or is required by law to be added to the lawful tax.
The information called for by such employment and such as is authorized by the statute is such as will authorize the auditor to subject to taxation any properly improperly omitted from the tax duplicate. And the statute (Section 1343-1) provides that “payment for such service shall be made only out of money actually paid into the treasury as taxes on such omitted property.”
By Section 2781, the proceeding, in ease of a false return or an evasion in making a return, is for the auditor to ascertain as near as practicable the true amount of -property that such persons ought to have returned or listed for certain years and to the amount so ascertained as omitted for each year he shall add fifty per centum, multiply the omitted sum or sums and as increased by said penalty by the rate of taxation belonging to said year or years and enter the same on the tax lists.
*162 Is the money paid into the treasury on the property so ascertained by the auditor as that which the tax-payer should have returned increased by the fifty per cent, addition thereto paid as “taxes on sioch omitted property” within the meaning of Section 1343-1? Or is it something more?
It is the claim of the relator that the money so derived is in part penalty.
The contention of the defense is that the fifty per cent, so ■added is simply the basis whereby the amount of taxes to be paid by the person who has failed to return his taxes according to law is ascertained. That it is not strictly penalty. That the intent of the statute (1343-1), is that the inquisitor shall have his percentage upon the amount of money paid into the treasury by his efforts.
It is observed by Minshall, J., in Gager v. Prout, 48 O. S., 89, 109, that—
“The provision for the addition of the amount omitted in the return of the tax-payer, and that for the addition of a penalty, are clearly separable. It is not necessary to impose a penalty that an addition may be made of what has been omitted. Under the statute, mere verbal criticism aside, the true amount omitted by the individual may be placed on the duplicate with the tax extended thereon without first increasing the addition by a penalty of fifty per centum.”
And on page 105 the court say:
“The object of this section is not merely to afford a remedy for bhe recovery of what is due the state under its system of taxation, but also to secure honest returns by adding a penalty to the making of false ones. It is conceded that the state may for this purpose add a penalty to the tax itself. What difference, then, can it make so far as any substantial right of the individual is concerned whether he is made to feel the penalty for a false return in the basis on which he is taxed >or in the rate of the tax itself.”
■Section 2781 denominates this fifty per cent, increase as “penalty” and seems to clearly distinguish the “omitted property” which the auditor in the proceeding has ascertained as that which the tax-payer should have returned, from this *163 “addition” which the law requires he shall add in case of a false return.
What is the reasonable import of the language, “money actually paid into the treasury as taxes on such omitted property” as used in this section?
The court in Slingluff v. Weaver, 66 O. S., 621, 628, say:
“The province of construction is to arrive at the true sense of the language of the act, not to supply language to help out a conjectured intent not to be gathered from the words used. The question is not so much what did the Legislature intend to enact as what did it mean by what it did enact.”
In Brower v. Hunt, 18 O. S., 311, 341, the court apply the rule as stated by Story, J., as follows:
“What the legislative intention was can be derived only from the words they have used, and we can not speculate beyond the reasonable import of these words. The spirit of the act must be extracted from the words of the act and not from conjectures aliunde.”
In Rhodes v. Weldy, 46 O. S., 234, the principle is laid down that—
“Where the same word or phrase is used more than once in the same act in relation to the same subject-matter and looking to the same general purpose, if in one eonnnection its meaning is clear and in another it is otherwise doubtful or obscure, it is in the latter ease to receive the same construction as in the former unless there is something in the connection in which it is employed plainly calling for a different construction. ’ ’
I apprehend that the words “such omitted property” refer to and have the same import as “property improperly omitted” in the preceding clause of the section; and means the true amount of property, which the auditor ascertains, in such case, the tax-payer ought to have returned or listed. The meaning of this “property improperly omitted” so .ascertained by the auditor in such a proceeding is not in doubt. It is clearly separable and differentiated from the fifty per cent, addition or penalty required by the statute to be added in such a ease to get the basis of taxation for that year. The true amount *164 of the property being found, the petialty is added with the same certainty that the tax itself is entered (Ratterman, Tr., v. Ingalls, 48 O. S., 484).
If the meaning of “omitted property” in the former part of the section is thus clear and definite, it must follow under this rule of construction that such words should receive the same construction in the latter part of the section -unless there is something in the connection in which it is employed plainly calling for a different -construction, and I do not see that there is.
I am of the opinion that the inquisitor’s percentage under the statute is limited to the taxes paid into the treasury on the omitted property, i. e., the property which the auditor finds the tax-payers should have returned; and is not entitled to percentage on the money derived from the tax-payer on the penalty added by the law to such omitted sum ascertained by the auditor as that which should have been listed; or to any percentage on penalties levied -and collected as such.
The consideration or percentage provided in the contracts on omitted property being severable from the percentage on the fifty per cent, addition, the contracts are not illegal or invalidated, in stipulating for percentage on .the omitted property, though unauthorized as to the penalty on such omitted property (9 Oye., 569).
(3) That they empower the inquisitor to compel the auditor to hold examinations of owners of omitted property at his request and in his presence whenever deemed advisable.
It is not claimed or shown by evidence that any such situation ever arose between the auditor and the inquisitor as that a request was made for an examination which it was not deemed advisable by the auditor to hold. The proposition is not argued by relator, and it does not appear that it is seriously relied upon in the ease. It may be observed, however, that since it is the duty of the auditor to act when reasonable information is presented, and on >his failure to do so the inquisitor could by a proceeding in mandamus compel him to, as in the Crites case, supra, we fail to see that an agreement to hold examinations of owners of omitted property whenever deemed advisable, and *165 on request (i. e.; reasonable request), invalidates the contract or exceeds the authority conferred by the statute.
(4) Because said contracts severally award to said Gilfillan the exclusive right to procure nnd produce evidence before the auditor with respect to omitted property.
The statute provides that the officers mentioned 'shall have the power to employ “any person.”
The contracts severally stipulate that the employment of defendant, Gilfillan, for the period mentioned in the contract was to be exclusive of all other persons.
The matter of the employment of the inquisitor being discretionary with the officers mentioned in the statute, it is likewise a part of their official discretion to determine whether one or more persons are necessary to accomplish best the purpose of the statute. It is not the rule of courts to set their discretion against that of the officials in such a case, while acting within the limits of the statute. While the employment in this ease has been made exclusive, we fail to see that this interferes with the right or duty of the auditor to receive or to act upon information obtained otherwise than through the inquisitor, with respect to omitted property.
(5) That the contract is unauthorized because it has a prospective operation, i. e., that it provides for and authorizes the payment of percentage on taxes on property improperly omitted from the duplicate and put on the tax duplicate by his efforts after the date of the contract as well as upon taxes on such property improperly omitted prior to the date of said contract.
The officers mentioned in the statute, “when they have reason to believe that there has not been a full return of property within the county for taxation, shall have power to employ any person to make inquiry and furnish the county auditor the facts as to any omissions of property for taxation, and property improperly omitted from the tax duplicate.”
The act 'does not contain language expressly limiting the inquisition to property improperly omitted prior to the date of the contract.
*166 My attention is called to the fact that the first act relating to the tax inquisitor (77 O. L., 205) contained a limitation as follows: “Provided, however, that such employment shall only be authorized as to any omissicfas occuring previous to the passage of this act.” In the two subsequent acts the proviso is omitted from which it is contended the legislative purpose to remove the limitation which had existed with respect to such contracts was indicated.
In the Crites case, supra, the contract, under the act in question, was allowed to have'a prospective operation; though the question does not appear to have been made in the case.
The inquiry provided by the statute goes to “any omissions of property for taxation”; to subject to taxation “any property improperly omitted.” The purpose of the statute is to aid in enforcing the constitutional rule that all property subject to taxation shall be equally taxed.
It is a canon of interpretation that language susceptible of more than one construction is to receive that which will bring it into harmony with the purpose of the statute rather than that which would tend to defeat it (23 A. & E. Ency., p. 319).
It was held in the Lewis case (12 O. D., 46) that three years was not an unreasonable time for such a contract. The contention of relator that inquiry in respect to property improperly omitted after the date of the contract can not be contracted for, if that construction prevailed, would seem rather to defeat than to aid the purpose of the law by bringing upon the duplicate all taxable property.
In the case of State, ex rel Wilson, v. Lewis, No. 51985, Superior Court, Cincinnati, the court, as appears by the entry in the ease, sustained a demurrer to the petition containing the question here presented; that the tax inquisitor was authorized to furnish evidence with respect to property that was omitted from the tax list subsequent to the date of the contract as well as prior thereto—thereby apparently adopting a construction opposed to the contention of the relator.
I am of the opinion that this contention of relator that the contracts are illegal in authorizing the payment of percentage in respect to property improperly omitted from the duplicate *167 and put on the duplicate by the efforts of the inquisitor after the date of the contract is not well taken.
(6) Having found reasons for upholding the statute on which the several contracts are based, it is sufficient to state, on the contention of relator, that the contracts are against public policy, and that the compensation stipulated to be paid to the inquisitor is exorbitant and unreasonable; that there can be no public policy or right in conflict with a constitutional statute. The statute has declared the public policy as to inquisitor contracts and fixed the compensation and the courts can not declare a different policy (Probasco, Exr., v. Raine, Auditor, 50 O. S., 378; Ohio Oil Co. v. Lane, 59 O. S., 307, 317; 9 Cyc., 482; State, ex rel Wilson, v. Gibson, 1 N. P.—N. S., 565).
(7) That said contracts' of January 26th, 1900, and December 24th, 1902, were never entered in the minutes of the proceedings of the county commissioners under and in accordance with the provisions of Section 878 of the Revised Statutes.
Section 878 is a provision as to contract entered into by the county commissioners as such. The contract provided for in Section 1343-1 to be made by the commissioners, auditor and treasurer, or a majority.of said officers, is not in my judgment such a contract as is contemplated in Section 878. Section 1343-1 designates the persons who are required to make the contract and does not have reference to the performance of an act by officers merely as such. Such a contract might be entered into by the participation of a single commissioner in conjunction with the auditor and treasurer, in which ease it is apparent that it was not entered into by the commissioners. The distinction in Hulse v. The State, 35 O. S., 426, seems applicable. It is urged in good point, it seems to us, that if Section 878 were applicable to such a contract as the one in question, since the county has accepted and enjoyed the benefit contracted for, it would be estopped from setting up its omission to make the entry. (Wilder v. Commissioners of Hamilton County, 41 O. S., 601, 602; Commissioners v. B. S. L. R. Co., 37 O. S., 205).
(8) That the contract of January 26th, 1900, was not signed by said Bailey W. Gilfillan.
*168 The contract was signed by the special officers or persons designated in the statute and Gilfillan gave his bond in accordance with the statute and contract and acted under the contract. It is to be observed that the statute is silent as to the form of the contract except as to the bond which shall be filed with the auditor. The contract being in writing and signed by the special officers required, satisfies the requirement of Section 4199 of the Revised Statutes upon the point of the time limit fixed in the contract. (Muscatine Water Co. v. Muscatine Lumber Co., 85 Iowa, 112; Dowes v. Morse, 62 Iowa, 232.)
(9) That there is no finding upon the commissioner’s record that said commissioners had reason to believe that at the time said contract was made there w.as any property improperly omitted from taxation in Franklin county.
The statute provides that when said designated officers or a majority of them have reason to believe that there has not been a full return of properly within the county for taxation they shall have power to employ, etc.
It is contended by relator that such a finding upon the commissioners’ record is essential as a condition precedent to any valid action by such officer.
We have reached the conclusion hereinbefore that it was not essential to the validity of the contract that it be entered in the minutes of the proceedings of the commissioners.
Section 1343-1 does not require, and my attention has not been called to any section which requires entry of such reason for belief on any record. It appears that a contract was entered into between the designated officers and the inquisitor. Acts done which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter. It has not been sought to show that reason for belief did not exist on the part of the officers but that no record of it was made. In respect to official acts the law will presume all to have been rightfully done unless the circumstances of the case overthrow this presumption. Lessee of Combes et al v. Lane, 4 O. S., 112; Lessee of N. Ward v. Barrows, 2 O. S., 242; Reynolds et al v. Schweinefur, 27 O. S., 311, 319),
*169 In the absence of a statute requiring such entry upon the ■ commissioners’ record I am of opinion that the contract is not invalid for the reason assigned, viz., that there was no record finding.
6. The claim is made in the petition that the defendant, Gilfillan, is not entitled to any compensation under his contract for information which he claims he furnished the auditor from which he placed upon the omitted duplicate on July 23d, 1900, personal property improperly omitted from taxation in the name of Cotton II. Allen for the years 1894, 1896, 1897, 1898 and 1899, because the information was obtained -by the inquisitor from the inventory of Allen’s estate filed by his administrator in the probate court of this county on May 11th, 1900. That the threatened misapplication on this account amounts to $105.14.
From the testimony it appears that Allen died January 26th, 1900; that his adminstrator was appointed February 5th, 1900; that the inventory was filed May 11th, 1900; that omitted property, consisting of stocks, bonds and diamonds, was put on'the duplicate by the auditor July 23d, 1900; that the inquisitor received his information as to the existence of said property from the inventory, but that the value of the holdings for the respective years was obtained from other sources; and that said omitted property was put on the duplicate through information furnished by the inquisitor.
It is urged by counsel for relator that the inqtxisitor is deprived of compensation on the omitted property in this instance for two reasons: (1). That the property should have been listed in the name of the administrator instead of the decedent, therefore bringing the question of compensation to the inquisitor within the exclusion provided by statute. (2). That the only information furnished by the inquisitor was obtained from the inventory. We shall examine these in -the order stated. From the language used in Section 6044 as passed April 25th, 1890 (87 O. L., 297), there appears to have been no distinction made in regard to the manner in which omitted taxes on property of estates should be listed on the tax duplicate. And under the *170 prQvision of this law the inquisitor was excluded from any part of an increased tax on property of any estate shown or not shown by the inventory. It contained the language:
“Nor shall any compensation of any kind be allowed or paid to any_ such person by reason of the omission of any of the property of any such estate, or any of the property included in any such inventory from any tax return, nor for. any services relating thereto, under, or by reason of any such contract.”
The Supreme Court in the ease of Gager v. Prout, 48 O. S., 89, (decided in 1891), held that property omitted from the tax return of Mary Barney in her lifetime was properly listed after •her death in the decedent’s name.
April 20th, 1893 (90 O. L., 217), Section 6044 was amended, the proviso of which is as follows:
“That no percentage nor any part of any increased tax on the property of any such estate covered by any such inventory, and required by law to be listed in the name of the executor or administrator, shall be allowed or paid to any person or persons under any contract for securing for taxation or putting on the tax list or duplicate property improperly omitted or otherwise omitted or not listed or returned for taxation, nor shall any compensation of any kind be allowed or paid to any such person by reason of the omission of any of the property of any such estate or any of the property included in any such inventory so required by law to be listed by the executor or administrator from any tax return nor for any services relating thereto, under, or by reason of any such contract.”
This section so as aforesaid amended April 20th, 1893, continued in force unchanged until May 15th, 1902.
It is contended by counsel for defendants that the phrases “and required by law to be listed in the name of the executor or administrator,” and “so required by law to be listed by the executor or administrator, ’ ’ in this amendment is but the legislative expression of the holding in the case of Gager v. Prout, supra, and established a distinction between property required to be listed in the name of the executor or administrator, and property which is to be listed in the name of the decedent.
It seems clear that the effect of the amendment continued to exclude the inquisitor from any part of the increased taxes *171 on property, shown or not shown by the inventory, which was required by law to be listed by the executor or administrator; but that it did not exclude the inquisitor from furnishing evidence relative to omitted property of such estate which is to be listed in the name of the decedent, or not required by law to be listed by the personal representative. Since the authority of the statute (Section 1343-1) authorizing the employment of the inquisitor'to furnish the auditor the facts relative to omitted property is general in its terms, the prohibition of the inquisitor’s compensation being limited by the amendment to property required by law to be listed by the executor or administrator, by implication opened the field to the inquisitor, subsequent to the passage of the amendment relative to omitted property which is to be listed in the name of the decedent.
Allen having died in January, 1900, and his administrator having been appointed in February of the same year, it would appear that personal property improperly omitted from taxation from 1894 to 1899 was properly listed in the name of the decedent.
But it is further contended that the only information furnished by the inquisitor was obtained from the inventory.
We have found that the inquisitor received his information of the existence of the property in question from the inventory; but that he obtained the information as to the time of the issue of the bonds and the period of holding of the property by Allen from other sources.
Would the presentation of the mere fact of the existence of the property to the auditor by the inventory make a ease of his official duty to proceed with the correction of a former tax return! If so, then it can not be claimed that the inquisitor has furnished the auditor the evidence necessary to authorize him to subject to taxation such property improperly omitted because in such a ease the law would have furnished it.
The consideration of this issue involves the question whether it is within the official duty of the auditor to search for omitted property.
■ Section 6044 of the Revised Statutes provides that the probate court shall, at the end of each month, deliver to the county *172 auditor a statement showing as to each inventory the aggregate value of each class of property, other than real, as shown by the inventories filed during that month for his use and the use of the proper board of equalization in the performance of their respective duties in relation to returns for taxation of personal property and the equalizing and correction of the same.
The duties of the auditor in relation to returns for taxation of personal property and the corrections of the same are provided for in Sections 2781, 2781a 2782. Under Section 2782 if the auditor shall have reason to believe or be informed that any. person has given to the assessor a false statement of the personal property, or has omitted or made an erroneous return of any property subject by law to taxation, he shall proceed at any time before the final settlement with the treasurer to correct the return and to charge such persons on the duplicate with the proper amount of taxes. And to enable him to do that he is empowered to issue compulsory process, and require the attendance of any person whom he may suppose has knowledge 'of the personal property in relation to such return.
“If he shall have reason io believe” or “be informed” that any person has given a false, evasive- or erroneous return he shall proceed to correct the return and charge such person on the duplicate with the proper amount of taxes.
Under the statute it will hardly be doubted that it is the right of the auditor to procure information, on his own motion, as best he can concerning omitted property. But it may be said that the statute does not make it the duty of the auditor to discover or hunt for omitted property. He is not required to assume that the returns are false—the property may have been acquired since the last return. The statute charges him -with no duty in respect thereto until he shall have reason to believe or be informed of such false, evasive or erroneous return.
I apprehend that to call for action as a matter of official duty on the part of the auditor, as a condition precedent, he should have reason to believe or be informed, from evidence of a substantial nature, that omission exists.
After receiving knowledge of the fact of such default on the part of the tax-payer or being apprised of it, the auditor *173 shall proceed to correct it and charge such person on the duplicate with the proper -amount of taxes.
In the case of City of Richmond v. Dickinson, 155 Ind., 345, where a statute in reference to omitted property was under consideration containing the language, “Whenever the county auditor shall discover or receive credible information of, if he shall have reason to believe that any real or personal property has from any cause been omitted ® * * he shall proceed to correct the tax duplicate,” etc. It was held the duty of searching for omitted property was not imposed upon the tax officer.
■An inventory may or may not give the auditor information of a false return of a decedent. I am unable to conclude in this instance that the presentation to the auditor through the inventory of the mere fact of the existence of certain bonds, stocks and diamonds was such information as made a showing of a false, evasive or erroneous return of decedent, Allen, and therefore a ease for correction. And since we have found that the inquisitor was not excluded from furnishing evidence of omitted property to be listed in the name of the decedent, it was within his province to furnish evidence as to the time the property had been owned by Allen and as'to the value for said respective years. And he is entitled under his contract to his compensation from the taxes on the omitted property so found by the auditor as that which Allen should have returned for said respective years.
7. Again issue is taken on the claim made in the petition that defendant, Gilfillan, is not entitled under his contract of December 26th, 1902, for information which he claims he furnished the auditor -upon which the auditor placed upon the omitted duplicate personal property in the name of Cotton Allen’s estate.
It is in evidence that Allen’s administrator was appointed •February 5th, 1900; that on January 26th, 1903, the appointment of Edwin R. Sharp, administrator de bonis non with the will annexed, was confirmed and inventory filed April 27th, 1903. This inventory revealed in the property classes of money and *174 stocks, property far in excess of any return of like classes in the tax list of former administrator, Benmead, so far as the record shows. This property was not embraced in the inventory of the estate of 1900, and was brought to the duplicate as omitted property after the second inventory was filed, and had not been returned for taxation by the personal representative for the three years named. And the inquisitor was in possession of an abstract of this second inventory.
On the 10th of May, 1902 (95 O. L., 546), Section 6044 was again amended, the proviso in respect to allowance of percentage under an inquisitor’s contract being as follows:
“That no percentage nor any part of any increased tax on the property of any such estate covered by any such inventory for the years for which it is required by law to be listed in the name of the executor or administrator shall be allowed or paid to any person or persons under any contract for securing 'for taxation or putting on the tax list or duplicate property improperly or otherwise omitted or not listed or returned for taxation. ”
It will be observed that the prohibition of compensation to the inquisitor by reason of the omission of any of the property of any such estate so required by law to be listed by the administrator from any tax return, in the latter part of the section, was eliminated.
It is contended that this cut out from exemption from search, inquiry and inquisitor’s percentage any property a prior inventory might omit and which an administrator might fail or neglect to return for taxation.
It is conceded that had the statute of April 20th, 1893 (90 O. L., 217, 218), remained in force down to the present time that the inquisitor would not be entitled to recover any percentage on this latter property so subjected to taxation. That the prohibition contained in the latter part of that act would have been conclusive against such claim or payment. But that the amendment of May 10th, 1902, applies to conditions which may have arisen while the act of April 20th, 1893, was still in force; that the claim of the inquisitor in this matter is one of remedy; *175 that the statute as last amended is retrospective as to it. (Gager v. Prout, 48 O. S., 89).
I incline to the view that the contention of counsel for defendants on this point is well taken. However, whatever the right of the inquisitor may be as to conditions of omitted property while the act of April 20th, 1893, was still in force, i. e., property a prior inventory might omit and which an administrator might fail or neglect to return for taxation (which is not here decided) I am of opinion that the inquisitor is not entitled to his percentage on the .omitted property in question for the reason that the fact of a false or erroneous return was presented to or in the possession of the auditor by the information of the second inventory.
It is claimed by counsel for defendant that the auditor’s 'duty arising on the filing of the inventory is prospective and has to do with the administrator and the inventoried estate and has no mandatory retrospective view which does not apply to all living tax-payers or tax dodgers.
But the duty of the auditor when information reaches him that a tax return needs correction arises in any ease, and applies equally in all cases. When the necessary information is at hand his duty to ascertain the true amount of property which ought to have been returned for certain years arises. This is distinct from a ease requiring search. His information as to the property of the estate covered by the second inventory and required by law to be listed in the name of the administrator, was not exhausted and did not become no information as to property which should have been listed by the former administrator or cease to be evidence as to it.
It was urged in the Gager v. Prout case, supra, that the inventory was not evidence to prove the existence of taxable property for previous years. But the court announced that “A certified4¡opy of the inventory of the estate of a deceased person filed by his executor in the probate court is competent evidence to show omissions in the returns of the deceased and in the absence of anything to the contrary may warrant the auditor in making additions. ’ ’
*176 Such inventoried information then would not seem to be entirely prospective or simply look forward for tax purposes with respect to the duty of the auditor in such cases.
In the case in question the law furnished the auditor the information through the second information of the fact of omitted property. Allen had been dead three years. The fact of the omitted property appearing by the inventory in 1903, it must have been omitted for 1902, 1901 and 1900, and a case for proceeding to correct the return of the former administrator was made. The inquisitor can not be said to have furnished the information in this instance since the auditor by provision of law already had it, nor is he entitled to receive - compensation for reproducing it. It can not be contemplated that the inquisitor'may run a race with the probate court to see who shall deposit the information first.
8. On December 11th, 1903, the auditor entered upon the tax duplicate, in the names respectively of twelve insurance companies, taxes on account of personal property in the county improperly omitted from the duplicate for the years 1901, 1902, and 1903, the total taxes claimed being $64,182.25. Issue is made that defendant, Gilfillan, performed no service and furnished no information whatever to the auditor by virtue of which the taxes of the property omitted by said insurance companies were placed on said- duplicate; that it was the duty of the auditor to place said taxes upon the duplicate for said years during which said -property was omitted to be returned by said companies, without any services- of defendant, Gilfillan; that said auditor had knowledge that said property was so omitted for taxation during each of said years.
In this list of companies, a number appear to have been listed for the first time" in 1903. The controversy relates especially to seven companies, viz., The Scottish Union & National Insurance Company, The United States Fidelity & Guaranty Company, The Lion Fire Insurance Company, The Travelers Insurance Company, The Canada Life Insurance Company, The British American Insurance Company, and The Fidelity & Casualty Company, in the list which had maintained property in this county for a number of years prior thereto.
*177 It appears in evidence that on November 9th, 1903, the inquisitor, Gilfillan, made an examination of the taxables of the said insurance companies and presented such information; that on December 11th, 1903, the auditor entered the property improperly omitted on the duplicate. The auditor testifies he had no information as to this matter from any other source. This important service of the inquisitor in this matter stands undisputed, and, further, that the entry was made upon the information furnished by him for the years 1901, 1902 and 1903.
Property of some of these companies set forth in the second cause of action had been put upon the omitted duplicate by auditor Halliday in 1900, and these entries were carried forward upon the duplicate by the present auditor.' In April, 1902, the matters of the taxes being then in litigation in the federal courts, some question arose as to the proper manner of entry as to those companies’ taxes, and as a precautionary measure charges were placed on the duplicate as to those companies in the name of Arthur I. Yorys, as trustee. This was a formal matter on the entries of Halliday and not the result of any additional information, and availed nothing.
It further appears that all of these companies except one after the action of Auditor Halliday either withdrew their securities or converted or changed the character of their securities—substituting in some eases non-taxable for taxable securities.
In view of all the evidence, my conclusion is that the claims of the relator that the inquisitor, in this instance, furnished no evidence to the auditor relative to the omitted property of said companies for said years and that the auditor had knowledge that said property was so omitted for said years, are not established. Neither am I able to conclude that the absence of a return of the property charged the auditor with knowledge that said companies 'had taxable property within the county or that a false or erroneous return had been made by the assessor.
The observations and holding hereinbefore made on the claim for added property covered by the first inventory in the Allen *178 matter are equally applicable to this claim for added property of the insurance companies. There is a distinct difference in such a situation in my judgment and that presented by the case of the second omitted lists of Allen property when the second inventory gave the auditor information of the existence of omitted property.
The auditor was not required to assume that the assessor’s return was false. The evidence is that the auditor had no knowledge as to the omitted property of the insurance companies in question until November 9th, 1903, and that the source of his information at that time was the inquisitor. Under such circumstances it seems clear that the statutes did not make it the duty of the auditor to hunt for omitted property. It provides (Section 27.82) that if the auditor shall have reason to believe or be informed that ,any person has given false return or that the assessor has not returned the full amount required to be listed or has made an erroneous return of any property subject to taxation, he shall proceed to correct the return of the assessor and charge such person on the duplicate with the proper amount of taxes on giving proper notice, etc.
If the statute shall receive a construction that the auditor shall assume all returns false or erroneous, and that he shall investigate and search in each ease, then the requirements of him would be practically impossible and there would be no need or use for an inquisitor, boards of equalization or boards of review. Such a view would be inconsistent with the recognition such taxing agencies have received.
My conclusion upon this issue is that the inquisitor is entitled to compensation out of the money actually paid into the treasury as taxes on the property which was ascertained said insurance companies should have returned for said years.
I desire in this connection to acknowledge the assistance counsel have rendered the court through their able briefs on the questions involved. The case has been attended with some feeling and arousing of public interest against ferreting contracts; but we consider that the policy of the state with reference to statutes supporting such contracts rests. with the Legislature *179 and not with the courts. And adopting in part the observation of Judge Smith in Deckebach v. Hagerty, supra, whatever may be said as to the contracts being imprudent on the part of the county, in so far as the percentage of the inquisitor is concerned, it must be conceded that as to the insurance matter involved the contracts have been of great value to the public.
A. T. Seymour, F. G. Rector and M. E. ThraüTcill, for plaintiff.
J. T. Holmes and Dyer, Williams c& Stouffer, for defendants.
My conclusion and finding is that defendant, Gilfillan, is not entitled to compensation for information claimed to have been furnished in October, 1903, relative to omitted personal property of the Allen estate; nor to percentage on the money derived from the tax-payer on the penalty added by law to omitted property which the auditor in any case finds the tax-payer should ■have returned. To this extent the said defendant is enjoined from presenting vouchers for such compensation; and defendant auditor from issuing, and Treasurer Bowland from paying any warrant on account of such compensation and entry may be drawn accordingly.