Moore v. Walker.

NANNIE MOORE, by next friend, v. J. A. WALKER et als.

1. MORTGAGEE. *Valuable consideration. Purchaser for value.* A mortgagee for a valuable consideration passing at the time is, to the extent of the consideration, a purchaser for value.

2. CONVEYANCE. *Voluntary.* A person *sui juris* conveyed his property by voluntary deed to his mother, upon a recital that his habits were such as to disqualify him from managing his property in a prudent and discreet manner, and that the income was sufficient for his support, in trust to permit him to receive the annual income arising therefrom during his life, and at his death the same to be at the absolute disposal of his mother, "or to those who would be entitled to the same under the statute of distributions from her." Some years afterwards, the mother on her death-bed re-conveyed the property to her son. Held, that he took a good title.

3. GRANTOR. *Weakness of body and mind. Undue advantage. Innocent purchaser will be protected. When.* If a grantor have sufficient capacity to make a conveyance of property, and only undue advantage be taken of his weakness of body and mind, a subsequent innocent purchaser from the grantee, after the lapse of twelve years without any steps taken by those interested to set aside the conveyance, would acquire the legal title, and a superior equity to the equity of the aggrieved parties.

4. INNOCENT PURCHASER. *Notice.* Language in a deed which admits of a construction consistent with the title, will not be notice to an innocent purchaser of an outstanding equity.

5. MARRIED WOMEN. *Right of Action. Statutes of Limitation.* Under the act of 1850, ch. 36, brought into the Code, sec. 2481, a wife who married before the passage of the act, became entitled to sue for and recover in her own name in equity her land of which she and her husband had been previously disseized by a third person, but not for the time required to create the bar of the statute of limitations against the joint-right of action of the husband and wife, and the separate right of action thus given by the statute would not be barred during the coverture.

## FROM MAURY.

Appeal from the Chancery Court at Columbia. W. S. FLEMING, Ch.

W. S. RAINEY, N. R. WILKES and A. L. DEMOSS. for complainants.

BARNETT & HUGHES for defendants.

COOPER, J., delivered the opinion of the court.

Nannie Moore, the wife of W. F. Moore, files this bill by next friend, claiming title to a tract of land conveyed by her husband to John A. Walker in mortgage to secure the price of a stock of goods. The mortgage deed was executed on the 20th of June, 1871, and, on the 20th July, 1874, the mortgagee, on bill filed for the purpose, had obtained a decree for the sale of the land in satisfaction of the debt, when the wife enjoined the sale by the original bill in this cause. That bill, filed on the 14th of November, 1874, set up title to the land by way of resulting or con-

structive trust. The amended bill, filed on the 6th of September, 1875, claimed direct title to one-third of the land. The Chancellor dismissed the bill, but without prejudice to the wife's right to the one-third of the land under the last claim, which right he was of opinion could only be asserted after the husband's death. The complainant appealed.

To determine in whom is the legal title to this land, it becomes necessary to trace a curious family history. About the year 1824, Solomon Herrin, who had owned the land from 1811, died, leaving a will by which he directed the balance of his personal and real estate to remain in the hands of his wife, Nancy, until his son Robert came of age, when, if his wife continued a widow, the estate was to be equally divided between her and the son, and at her death or if she should marry, he devised the entire estate to the son. The widow married L. B. Boyd shortly after her first husband's death, and had by him three children, in the order named, Laird B. Boyd, John R. Boyd and Nannie Boyd, the last being the present complainant. John R. Boyd was born in 1829, and Nannie Boyd in 1832. Robert Herrin, the testator's son, died on the 13th of July, 1834, being then about two months over twenty-one years of age. Boyd and wife went on the tract of land in controversy a year after Robert Herrin's death, and continued to occupy it until Boyd died, in 1840 or 1841. Nancy Boyd, his widow, then assumed control. Laird B. Boyd, her eldest son, in his deposition in this case, says: "Our family understood the land to be the property of our

mother. She claimed it as her own, as the heir of Robert. She gave the land to John R. Boyd, making him a deed, who took possession about the time he came of age. After I came of age, I traded my interest in the land to John, and gave him a deed therefor." Nancy Boyd continued to live on the place until 1855, when she moved to Nashville, where she died on the 2d of September, 1858. Nannie, her daughter, intermarried with W. F. Moore on the 4th of January, 1848. Moore and wife lived on the land a few years, the precise date not given, and then moved to another place. John R. Boyd died in March, 1860, and Moore and wife returned to the place, and resided there until the improvements were burned, after the war. They have since resided on an adjoining farm, the property of the husband.

After John R. Boyd took possession of the land, the following conveyances were made and registered: John R. Boyd to Nancy Boyd, December 13th, 1850. Nancy Boyd to John R. Boyd, September 2, 1858. John R. Boyd to W. F. Moore, March 10, 1860. Laird B. Boyd to W. F. Moore, December 15, 1860.

The paper title seems to be in Moore, the husband, but the several conveyances contain peculiar features. Upon these peculiarities the claim of the complainant is in part rested.

John R. Boyd became at an early age addicted to the excessive use of spirituous liquors; he drank by spells, during which the appetite was uncontrollable, and he became utterly wild and reckless, and at times dangerous. In the intervals of these spells he was

intelligent and sensible, although, during the last two
or three years of his life, greatly enfeebled both in
body and mind.   His deed to his mother of the 13th
of December, 1850, is for the nominal consideration
of five dollars, and conveys not only the land but in
addition eight slaves, all his property in fact except
some litle reserved for the payment of his debts.
It recites that his habits are such as to disqualify him
from managing his property in a prudent and discreet
manner; that he frequently contracted debts improvi-
dently, and that the income of his property was suffi-
cient for his support.    Now, therefore, it says, this
deed is made for the following uses and trusts, and
for no other purpose whatever.    First, for the pay-
ment of his debts, if the property retained be insuffi-
cient for the purpose.    "Then the said Nancy is to
hold the property conveyed in trust to permit me to
receive the annual income arising therefrom during my
life, and at my death the same is to be at the abso-
lute disposal of the said Nancy Boyd, my mother, or
to those who would be entitled to the same under the
statute of distributions from her."

The re-conveyance of Nancy Boyd to John R. Boyd
is upon the nominal consideration of five dollars.    The
deed of John R. Boyd to W. F. Moore is in con-
sideration of love and affection and of various sums
of money paid by the latter for the former.    The
deed from Laird B. Boyd to W. F. Moore recites a
consideration of $4,000 paid, and binds the grantor to
warrant the title of "said land or so much thereof
as I, the said Laird Boyd, am entitled to as heir of

my brother, John Boyd, as under a deed made by him to his said mother, to which reference is had, against the claims of all persons whatever. I also release to the said Moore all claim I have in and to said land, and every part thereof, for the consideration aforesaid. But I bind myself for only that portion of said land which I would be entitled to as aforesaid, being one-half, the wife of said Moore being entitled to the other half, if he is not entitled to the whole by the conveyance under which he now holds and claims the entire tract." The original bill claimed that complainant was entitled to one undivided half of the land in controversy, by virtue of the trust conveyance of the 13th of December, 1850, by John R. Boyd to his mother, upon the ground that the re-conveyance by the mother to the son was *ultra vires* and void, and, consequently, the son could make no valid title to the husband. The bill also claimed that if the re-conveyance of the mother to the son was good, the subsequent deed from the son to the husband was void for want of capacity in the son to make it. It was also claimed that the consideration of various payments was fictitious, and the love and affection for complainant, not for the husband. In either event, as both the mother and son died intestate, the complainant would inherit one-half of the land as heir.

The conveyance of the 13th of December, 1850, is a very curious instrument. If it was simply a mode adopted to give the grantor the beneficial use of the property, he being the only *cestui que trust,* and the grantee taking only such title as was necessary to

effectuate this purpose, it was, perhaps, simply waste· paper. The legal effect of the instrument was to clothe the grantor with the title, and beneficial interest, and leave nothing in the trustee, or, at any rate, only a bare legal title. The power of disposition would remain in the grantor, the law recognizing in him no authority to tie his hands in that way. *Harding* v. *St. Louis Life In. Co.,* 2 Tenn. Ch., 465. If, however, the grantor intended to pass the remainder interest in the property as a gift executed by the conveyance itself, then it is clear, that the remainder, together with the legal title, vested in the mother, and was at her absolute disposal. The conveyance is in trust for the benefit of the grantor for life, and· after his death, in trust for the mother, to be at her absolute disposal. The legal title and beneficial interest are vested in her. The absolute power of disposition given to the mother was incompatible with any interest in her heirs. *Smith T.* v. *Bell,* M. & Y., 302. They could only take as her· heirs, in the event she failed to exercise the power of disposition.

The deed of John R. Boyd to W. F. Moore was attested by two witnesses, who proved its execution at the time, and it was registered. One of these· witnesses, upon examination in this case, thinks that Boyd was then incompetent to make it, the other concedes his great weakness of body and mind, but thinks he was competent. If the incapacity was such as to render the instrument void, even an innocent purchaser could acquire no rights under it. If, however, the

capacity was sufficient to enable the grantor to make the conveyance, and only an undue advantage taken of his weakness, a subsequent innocent purchaser after the lapse of twelve years, without any steps taken by those interested to set aside the conveyance, would acquire the legal title, and a superior equity to the equity of the aggrieved parties.

The weight of evidence is in favor of the capacity of Boyd when not under the influence of liquor, up to his death. He seems to have fully understood the object of executing the deed, the only difficulty experienced with him being in sufficiently steadying his nerves to write his name. The proof is ample that Moore did make payment of his liabilities, watch over and support him during the last years of his life. There was a sufficient consideration to sustain the deed. Moore was at the time a man of ample means, and, even if the consideration of love and affection was for Moore's wife or children, the grantor might well suppose that it would make no difference, so far as they were concerned, if the deed were made directly to the husband and father. We concur with the Chancellor in thinking that this branch of the relief sought has not been made out. Nor is there anything in the deed of Laird B. Boyd which would affect the rights of a subsequent innocent purchaser. That deed conveys all claim the grantor may have to the land, but warrants title only to that part which the grantor took as heir of his brother John, " as under " the deed to his mother. No person looking to this instrument, and finding a re-conveyance from the mother to John,

would construe the language as meaning anything more than a reference to the deed to the mother, and that Laird and complainant were the heirs of John, and entitled each to one-half of the property as such, unless John had validly conveyed the land to Moore. Certainly after the lapse of twelve years, a purchaser might well consider Moore's title good to the entire tract.

There is some evidence in the record tending to show that Nancy Moore, at the date of the deed of re-conveyance to her son, was incapable of making the deed. The instrument bears date the 2d of September, 1858, and she died on the next day. She seems to have died of typhoid fever, and on the day preceding her death was so enfeebled as to induce some ·of the witnesses who then visited her, not to disturb her. But the same evidence shows that when aroused, ·she recognized her acquaintances. The deed was written by her own brother, who, so far as appears, had no interest in the matter, and was attested and proved by two of her neighbors, and registered shortly thereafter. Neither of the bills makes any contest over this deed, or states any facts upon which its validity ·can be impeached. And even if any advantage was taken of the weakness of the grantor, that fact, as we have seen, would not affect the title of an innocent purchaser after the lapse of twelve years.

A mortgage upon a valuable consideration passing at the time is, it need scarcely be added, *pro tanto* a sale. To the extent of the consideration, the mortgagee is a purchaser for value. *Mills* v. *Banks*, 3

P. W., 9; *Williams* v. *Woodard,* 2 Wend., 478; *Hoggatt* v. *White,* 2 Swan, 268; *Bass* v. *Wheless,* 2 Tenn. Ch., 531. The defendant Walker, unless the recitals of the registered conveyance gave him notice, is a *bona fide* purchaser for value to the amount of his debt, without notice. He relies on, and is entitled to the benefit of this defense, so far as the complainant's claim is made to rest on the conveyances under consideration. There is no ground for the assumption that a resulting trust was created in favor of the complainant at the passing of the title by these conveyances. But even a resulting trust, and, *a fortiori,* a constructive trust, must yield to the equity of a *bona fide* purchaser for value, without notice, who has the legal title. *Sandford* v. *Weeden,* 2 Heis., 71, 81; *Turner* v. *Petigrew,* 6 Hum., 438; *Bass* v. *Wheless,* 2 Tenn. Ch., 531.

But the title of the complainant to one-third of the land as heir of her half brother, Robert Herrin, is, upon the facts of this record, superior to the title of the defendant Walker. She has never parted with that interest, nor has the statute of limitations operated to bar her right. She was a member of her mother's family during infancy, and therefore living with her on the land. It is the settled law of this State, that where the possession of property is mixed and concurrent, the legal seizin is in the person who has the estate, even in the case of parent and child. *Fancher* v. *DeMontegre,* 1 Head, 40; *Stewart* v. *Harris,* 9 Hum., 716; *Knight* v. *Jordan,* 6 Hum., 101; *Hurd* v. *French,* 2 Tenn. Ch., 355. The statute of limitations did not,

therefore, commence to run against complainant until after her marriage, and she has since been under the disability of coverture. It is very probable that the adverse possession only commenced after her brother, John R. Boyd, took actual possession under the deeds of his mother and elder brother, which was probably subsequent to the 10th of January, 1850, when the act of 1850, ch. 36, brought into the Code, sec. 2481, was passed.

And whether this was so or not, it is certain that the bar of the statute had not operated when that act went into effect. Previously thereto, it had been repeatedly held that a husband by marriage became jointly seized with his wife of a freehold estate in her land; that a disseizin during coverture is a disseizin of the joint estate, and the husband and wife must jointly sue to recover possession; and, on failure, that the joint right of action would be barred by seven years' adverse possession. *Guion* v. *Anderson*, 8 Hum., 325; *Weisenger* v. *Murphy*, 2 Head, 676; *McClung* v. *Sneed*, 3 Head, 222; *Murdock* v. *Johnson*, 7 Col., 605. In the last case cited, upon an application for re-hearing, the question was reserved whether the wife, although she could not sue alone at law, might not maintain a bill in equity to set up her rights, even if not entitled to possession until the husband's death. This question has since been resolved in favor of the right. *Dodd* v. *Benthal*, 4 Heis., 601. And where the disseizin occurred after the passage of the act of 1850, it has been held that the wife may, by bill in equity, recover possession of the property at once.

Moore *v.* Walker.

*McCallum* v. *Petigrew*, 10 Heis., 394. The decison is put upon the ground that, by a fair construction of the statute, the intent of which is that the wife shall not, by any act of her husband, be deprived of the possession of her land, the right is secured to the wife to prosecute a separate action to recover possession. As to this separate right of action, the statute of limitation does not run during coverture, and the wife may, therefore, sue at any time without waiting until the husband's death. The principle upon which the decision rests, must equally apply where the disseizin took place before the act was passed, if the right of the disseizor had not become perfected by the lapse of the statutory bar before its passage. For, the subsequent neglect of the husband to resort to the joint right of action of husband and wife, would not affect the separate right of action of the wife secured by the statute. *Cantrell* v. *County of Davidson*, 3. Tenn. Ch., 428.

The Chancellor's decree will be modified in this regard, and in other respects affirmed. The costs of this court will be paid by the defendant Walker.