### EQUITABLE B. & L. ASSN. v. CORLEY.

B. & L. ASSOCIATIONS—MORTGAGES—RECORDING NOTICE.—Where money is advanced to a member of a building and loan association in a foreign State, and the bond executed as evidence of the debt is silent as to place of payment, but provides "this obligation is a Georgia contract and in all respects subject to and governed by the laws of Georgia," must be construed as to application of payments in accordance with the laws of Georgia. Where the mortgage securing such bond simply refers to the bond for conditions, mortgage alone being recorded,

it is no notice to a purchaser of the land of the conditions of the bond other than those appearing on the record of the mortgage, but in this case the purchaser held to have notice of these conditions of the bond by reason answering jointly with the mortgagor, paying in monthly instalments, and not setting up in answer want of notice of conditions of bond.

Before WATTS, J., Lexington, June, 1904.    Affirmed.

Action by Equitable Building and Loan Association against P. H. Corley and Roof & Barre Lumber Co. From Circuit decree, defendants appeal.

*Messrs. Efird & Dreher,* for appellants, cite: *This debt is paid in full:* 62 S. C., 178; 65 S. C., 448.

*Mr. R. W. Shand,* contra, cites: *The law of Georgia governs this case:* 49 S. C., 402; 50 S. C., 309; 51 S. C., 33; 53 S. C., 76; 68 S. C., 236; 28 S. C., 534; 54 S. C., 214. *Bond is not affected by act of 1898:* 53 S. C., 73; 55 S. C., 295, 316. *Mortgage gives sufficient notice of conditions of bond:* 1 Jones on Mtg., sec. 71; 16 S. C., 75; 43 S. C., 75.

October 7, 1905.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The Equitable Building and Loan Association, a corporation having its principal place of business in Augusta, Ga., brings this action to foreclose a mortgage on land in Lexington County, S. C., executed by the defendant Corley, a resident of South Carolina. The land was afterwards conveyed by Corley to Roof and Barre, and by them to the defendant Roof & Barre Lumber Company. The answer sets up the plea of payment. The first question arising under this plea is, whether all sums paid to the Equitable Building and Loan Association by Corley and his grantees, after Corley made the mortgage and borrowed the money, should be credited on the sum borrowed and interest,

or should be applied not only to that, but also to the expenses of the association and premiums, as provided by the bond.

We first consider this question as it effects the rights of Corley, the original mortgagee. If the contract is governed by the law of this State, as defendants contend, the former method of computation would be correct, and the bond and mortgage would be overpaid. *Association* v. *Holland,* 65 S. C., 448; 43 S. E., 978. The Circuit Judge, however, held the contract fell under the law of Georgia, and that by that law the bond was to be computed according to its terms, which included not only the sum actually borrowed, with interest, but the expenses and premiums for which Corley was liable as a borrowing member of the association. The following is the statute of Georgia under which the computation in the Circuit decree was made: *"Be it further enacted,* That no fines, interest or premiums paid on loans in any building and loan association shall be deemed usurious, and the same may be collected as debts of like amount are now collected by law in this State, and according to the terms and stipulations of the agreement between the association and the borrower"* (Laws of Georgia, 1890-91, vol. 1, pages 176-181, sec. VIII.) This statute was construed by the Supreme Court of Georgia, in *Cook* v. *Equitable Building and Loan Association,* 30 S. E., 911; and *Burns* v. *Equitable Building and Loan Association,* 33 S. E., 856. If the Georgia statute governs the contract, it is obvious from its terms, as construed by the Supreme Court of Georgia, that there was no error in the decree of the Circuit Court.

The complaint alleges "that at Augusta, in Georgia, on August 3, 1895, the plaintiff advanced to the defendant, Patrick H. Corley, on four shares of the stock of this plaintiff, held by him, the sum of four hundred dollars, and in consideration thereof the said Patrick H. Corley made, executed and delivered to plaintiff his bond, dated August 3, 1895, in the penal sum of eight hundred dollars." The pleadings and the bond and mortgage are silent as to the place of payment. The law of the place where the contract

is made governs as to its construction and the obligations
which arise from it where it does not provide for the appli-
cation of the law of a different place, and makes no mention
of the place of payment.    9 Cyc., 668; *Touro* v. *Cassin,* 1 N.
& McC., 173; *Pegram* v. *Williams,* 4 Rich., 219.    Here it is
not only admitted the contract was made in Georgia, but also
that by the bond the parties expressly contracted, "that this
obligation is a Georgia contract, and in all respects subject
to and governed by the laws of Georgia."    The law appli-
cable to such an agreement is so well and accurately stated
by Scates, C. J., in *McAllister* v. *Smith,* 17 Ill., 328, 65 Am.
Dec., 651, 654, that we quote at some length from his
opinion, though it would be sufficient to refer to our own
cases of *Thornton* v. *Dean,* 19 S. C., 583; *Association* v.
*Hoffman,* 50 S. C., 303, 27 S. E., 692; and *Association* v.
*Rice,* 68 S. C., 236: "The contracts were made in this State,
and the laws of this State would, had the parties been silent,
have become part of the contracts for the construction and
meaning of the parties, in ascertaining and fixing their
mutual rights and obligations.    But parties may substitute
the laws of another place and country than that where the
contract is entered into, both in relation to the legality and
extent of the original obligation and in relation to the re-
spective rights of the parties for a breach or violation of its
terms.    This I call a substitution of the laws of another place
or government for those of the place of entering into the
contract, and which is noted by the authorities as an excep-
tion to the general rule.    This is allowed in all civilized
countries, and recognized as part of the *jus gentium,* or law
of nations, respecting private and personal rights, and in all
cases where the subject-matter of the contract is not *malum
in se,* immoral, or contrary to the local policy, or dangerous
to the peace and good order of the particular community in
which it is sought to be enforced.    When parties seek to
enforce such obligations in the courts of the country whose
laws have been adopted as those of the contract, it presents
only an ordinary case of jurisdiction to the court over a con-

tract made under the same laws of the forum, and by parties within its jurisdiction. But when the enforcement of the contract is sought in the courts of a country governed by a different rule than the local or adopted law of that contract, the law governing it has no force or obligation *ex proprio vigore* in that forum, but *ex comitate,* under the general public law, the court will enforce it, giving extraterritorial effect to the laws of another government where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government. Where the legislature does not define and prescribe the extent of this comity, it must be declared by the courts in each case, governed by precedents, under the general public law." 9 Cyc., 665-666. We conclude the contract was governed by the law of Georgia, and as to Corley the computation was correctly made.

The serious question remains whether the plaintiff can foreclose the mortgage on the land in the hands of the Roof & Barre Lumber Company, a subsequent purchaser, for more than a debt of $400 and interest, less the payments made. The bond contemplates that Corley should remain a member of the association after he became a borrower, with the obligation of a member to pay $1.20 per month on each share of his stock until the series to which his certificate belonged should mature—maturity being the date when these payments would aggregate enough, after taking out expenses and premiums, to liquidate the principal of the debt of $400. It contemplates further that he should pay in addition each month interest on the $400 at the rate of six per cent. per annum until the stock should mature, and that his four shares of stock should be assigned to the association as collateral for the obligations of the bond. Upon these payments being kept up until the maturity of the series, the bond stipulated that the obligation would be at an end. The mortgage contains none of these provisions as to the payment of stock, but merely recites that it is given to secure the payment of a bond in the penal sum of $800 conditioned for the payment of $400, "as in and by the said bond and conditions thereof,

reference being thereunto had, will more fully appear."
There is nothing whatever in the record of the mortgage to
indicate or to put a purchaser of the land on notice that
Corley was a member of the association or anything more
than an ordinary debtor; for we do not think the fact that
it was given to a building and loan association and no date
of maturity specified, could be regarded sufficient for that
purpose. If, therefore, there were nothing beyond the
record of the mortgage to show notice of the terms of the
bond, the principles of *Association* v. *McCartha*, 43 S. C.,
72, 20 S. E., 807, would be applicable, and the defendant,
Roof & Barre Lumber Company, would not be chargeable
with notice of anything beyond an ordinary debt of $400
secured by the mortgage. We find, however, that Roof &
Barre Lumber Company answered the complaint not sepa-
rately but jointly with Corley, and the answer, while admit-
ting the execution of the bond and mortgage by Corley, says
nothing of a want of notice of the terms of the bond set out
fully in the complaint. But what is still more significant,
Roof & Barre and Roof & Barre Lumber Company continued
to pay each month after the purchase, for sixty-four months,
the sum of $6.80, which was precisely the amount called for
each month by the bond, and which, before the sale of the
land, had been paid by Corley. There is no evidence that
there was any demand made by the mortgagee for these pay-
ments, and it is a fair inference that these parties bought the
land with knowledge of the character of the debt represented
by the bond which the mortgage secured, and undertook to
pay it. They never have indicated, however, in any way that
they knew of the provision for the collection of attorneys'
fees, and the Circuit Judge correctly held these fees could not
be collected from the land.

The judgment of this Court is, that the judgment of the
Circuit Court be affirmed.

THE CHIEF JUSTICE *did not participate in this opinion
because of illness.*