## JOHNSON CITY v. MILLIGAN UTILITY DISTRICT et al.—276 S. W. (2d) 748.

Eastern Section.  July 1, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

George F. Brandt, William F. Guinn, Simmonds & Bowman and Cox, Epps, Miller & Weller, all of Johnson City, and Robert M. May, of Jonesboro, for appellant Johnson City.

Shull & Wall, of Elizabethton, and Frank Bryant, of Johnson City, for appellee Milligan Utility Dist.

White, Gullett, Farrell & Phillips, of Nashville, for appellees Bondholders of Milligan Utility Dist.

McAMIS, P. J.    The city of Johnson City instituted this suit against the Milligan Utility District and its vendors, James A. Ponder and wife, seeking a decree enjoining the District from taking possession of a six inch water line located in a public highway in Carter County and to have a declaration of the city's rights. After the issues between the original parties had been formed by their pleadings, certain bondholders of the District became parties by intervening petition. From a decree dismissing its bill the City of Johnson City has appealed.

The City of Johnson City, a municipal corporation with situs in Washington County, was empowered by Chapter 121, Acts of 1909, to acquire and operate a water system within its corporate limits and adjacent territory. Its claim to the water line here involved and the right to sell water to inhabitants of Carter County served by the line are predicated upon adverse possession and upon the terms of a resolution of its governing body adopted August 26, 1927, by which it agreed with Lee F. Miller and John W. Williams that, if they would install a line through their proposed sub-division located outside the corporate limits of the City on the Milligan Highway in Carter County, the city would furnish water within the area. The line was installed without expense to the city by Miller and Williams in 1928 and the city furnished water through it to inhabitants of the area until after this case was appealed to this Court when the line was cut by the District upon refusal of a member of the Court to stay such action pending the appeal.

The Milligan Utility District was organized under the provisions of what is known as The Utility District Act of 1937, 1950 Code Supp., Section 3695.26 et seq. After newspaper publication of notice as provided by the Act, a hearing was. held before the County Judge of Carter

County June 5, 1951, which resulted in a decree of that date (1) adjudging that the public convenience and necessity required the creation of a district to furnish water to an area in Carter County embracing the area then being served through the line here in question by the city, (2) creating the Milligan Utility District and (3) purporting to grant to it an exclusive franchise for the area described in the petition. Although the responsible officials of the city had general knowledge that a district was proposed for the area being served by the line, it is not shown that it had actual knowledge or notice, other than the newspaper notice referred to, that a hearing was to be held. It was not represented at the hearing; nor did it appeal as authorized by the Act.

Two questions are involved: (1) Title to the line and (2) the right to serve the water needs of the area. We consider first the question of title to the line noting that the city, though originally basing its claim to title or an option to acquire title upon the terms of the resolution and upon adverse possession for more than 20 years, now takes the position that the question of the naked legal title is immaterial because irrespective of the question of title the resolution gave the city the perpetual right to use, supervise and control it.

The record shows that Miller and Williams expended nearly $10,000 in constructing the line and that upon its completion they were indebted to the American Cast Iron Pipe Company for pipe in the amount of $1,900. Being unable to pay due to the onset of the depression, on February 19, 1931, they executed a deed of trust on the line, then installed in the ground along the state highway right of way through the Miller and Williams subdivision. The deed of trust was later foreclosed and, on April 5, 1952, the Trustee conveyed the line to American Cast

Iron Pipe Company. On October 30, 1943, the Pipe Company conveyed the line by quit-claim deed to James A. Pouder and wife and they, in turn, in 1951, for a consideration of more than $40,000, executed a quit-claim deed to the District. All of these instruments were duly recorded in the office of the Register of Deeds for Carter County.

The city has not assigned error on the Chancellor's finding that the foregoing instruments constitute the recorded chain of title of the District. It insists, however, that each of these instruments conveyed notice of its claim or, at least, was sufficient to put a purchaser upon inquiry which, under our decisions, is the equivalent of actual notice. It also insists that its possession and use of the line throughout the period of these conveyances constituted constructive notice of its rights.

As bearing on the efficacy of the notice conveyed by the instruments appearing in the chain of title of the District, we quote, as typical of the others, the pertinent language of the deed of trust from Miller and Williams to the Pipe Company:

> "* * * our six-inch water-pipe line, connected with the regular system of Johnson City, Tenn.* * * on what is known as United States Highway No. 11-E * * * *together with* all rights, interests and equities, of every kind and description, which the first parties have in and to a contract or ordinance with the City of Johnson City, permitting the installation and maintenance of said system, and regulating the flow of water therein and thereto." (Italics ours.)

The city's briefs seem to go on the assumption that "together with" is synonymous with "subject to" and a number of authorities, notably Texas Company v.

Aycock, 190 Tenn. 16, 227 S. W. (2d) 41, 45, 17 A. L. R. (2d) 322, are cited holding similar language sufficient to put a purchaser upon inquiry. Opposing counsel insist, on the other hand, that there is nothing in the language of any of these instruments suggesting that Miller and Williams "had ever conveyed any property rights in their pipe line to the City."

In Texas Company v. Aycock, supra, the reference in the chain of title showed that the land was "encumbered" by a lease to the Texas Company. Though the lease was unrecorded this was held sufficient to constitute the equivalent of actual notice. The Court, speaking through Mr. Justice Tomlinson, said:

"Since Aycock and wife were given actual written notice (the deed) by the owners that the land they owned and purported to convey to Aycock and wife was encumbered by a lease to The Texas Company, they, the Aycocks, were put upon inquiry as to what were the provisions of that lease, and as to whether it contained the commonly occurring option to purchase clause."

In that case the plain and unmistakable import of the language of the deed was that another instrument, in derogation of the title, was outstanding. The words "together with" suggest, to the contrary, that the instrument in question not only does not impair the title but confers additional rights having no connection with the title. The natural inference from the contract or ordinance considered and construed as a whole in so far as revealed by the deed is that it was a benefit and not a burden to the owner of the line. In the context in which it is mentioned, we do not think giving the city the right to regulate the flow of water to and within the pipe can reasonably be construed as conferring upon it the right to use the line

for its own purposes over the objection of the owner. Only by so construing the reference to the ordinance can the present case be brought within the Aycock case or any of the other cases cited in the briefs involving adverse claims or encumbrances.

■ A reference which upon its face is of such doubtful meaning cannot constitute "actual notice", Code Section 7665, or, as said in the Aycock case, the equivalent of actual notice sufficient to impute knowledge of an unrecorded instrument to an otherwise bona fide purchaser. Moore v. Walker, 71 Tenn. 656, 657.

■ Even where the statutory requirement of actual notice does not apply, the principle of constructive notice derived from the recitals appearing from the chain of title has its qualifications. It should not be pressed further than the reason upon which it is founded. Such recitals charge the purchaser with notice of those facts alone which they import. Annotation, 7 L. R. A. 841; Equitable Bldg. & Loan Ass'n v. Corley, 72 S. C. 404, 52 S. E. 48, 110 Am. St. Rep. 615; 55 Am. Jur. 1084, Vendor and Purchaser, Sec. 709; 29 Am. Jur. 241. Uncertainties and ambiguities in the language of the recital should be resolved consistently with the legal title and in favor of an otherwise innocent purchaser. Cf. Moore v. Walker, supra.

The claim of title by adverse possession, now virtually abandoned, and the sufficiency of the possession of the city to constitute constructive notice of its claim under the resolution may be jointly considered.

■ The resolution of the City Council of August 26, 1927, provided that the line should be kept in repair by Miller and Williams or their successors and assigns without expense to the city and that Miller and Williams could collect a "tap fee" or connection charge as each

new customer would be connected. After the line was bid in by the Pipe Company the city demanded that it, bear the expense of repairs and repair bills were paid by the Pipe Company. The record is not clear when the city discontinued the practice of billing for repairs made on the line. The record shows without dispute, however, that it has always recognized the right of the Pipe Company and of Pouder and wife to receive the 'tap fees''. It also recognized that they owned the line by negotiating for its purchase from time to time. The record is barren of any inference that the city ever voiced a claim to own the line or the right to use it prior to the proposed formation of the District. Until that time we think the record fairly shows that its use was permissive or, at least, that the city's possession was not exclusive. We have no difficulty in concluding that the Chancellor rightly overruled the defense of 20 years adverse possession.

■ While the question does not appear to have been considered in this State, the great weight of current authority supports the rule that joint occupancy by two or more persons one of whom is the owner of the recorded title will not put prospective purchases or encumbrancers on inquiry as to the rights of those occupants who do not hold the title of record. The reasons most often advanced as justifying the rule are that possession must be exclusive as it cannot be where there is joint occupancy and where the prospective purchaser finds the title holder in possession there is normally nothing to arouse suspicion that any others occupying or using the property are claiming the right to do so over the objection of the holder of the record title. See innumerable cases collected in annotations at 2 A. L. R. (2d) 858; and see also 55 Am. Jur. 1090, 1091, Vendor and Purchaser, Sections 716, 717.

██ We think these principles should be applied here. From the nature of the property and its location underground along a public highway manual possession in the usual sense with complete control and dominion was impossible. The most that can be said is that the city repaired the line when its customers complained and that it used it to supply them with water, continuing all the while to recognize the rights of the holder of the legal title by paying over to them the "tap fees". We think a prospective purchaser would be justified in assuming that the use of the line by the city was not inconsistent with the record title.

This view makes it unneccessary to determine whether, as the Chancellor held, the resolution in question purporting to give the city an option to purchase without limitation as to time violates the rule against perpetuities and whether, because not signed by Miller and Williams, it is voidable under the statute of frauds. We hold that the District is a purchaser, and the bondholders encumbrancers for value and without notice.

Under the pleadings there remains only the question of the so-called franchise rights of the city in the area now being served by the District.

We find it unnecessary to decide many of the interesting questions, ably discussed in the briefs, relating to the binding effect of the purported grant by the County Court of an exclusive water franchise to the District. The right of the city to challenge the grant either for want of notice conforming to due process standards or lack of jurisdiction to trench upon the territory already being served by an existing utility depends upon possession by the city of a franchise to serve the area as a public utility at the time of the creation of the District. If it did

not have such a franchise it would clearly be without right to attack the validity of the District's franchise.

The city entered the field prior to the enactment of Chapter 23, Pub. Acts of 1949 and, so far as appears, without ever having obtained a franchise to install its pipes along the state right of way. The arrangement with Miller and Williams under which it entered expressly reserved to the city the right to differentiate between customers within and without the city not only with respect to the rates to be charged (for which there may have been a reasonable basis in the cost of the service) but also with respect to continuing the service in event of a water shortage. Section 4 of the resolution provides:

"It is further understood and agreed that in as much as the premises to be supplied hereunder lie outside the corporate limits of the said City, the water service thereto may be discontinued, when in the opinion of the Board of Mayor and Commissioners, or the governing body of the said Water Department, it may be advisable to discontinue so furnishing water, on account of insufficiency of supply or other good reasons. In consideration of the service rendered temporarily hereunder to the premises outside the said corporate limits, the customers release the said Water Department from any further obligation after thirty days notice of the intention of the City to discontinue the said service."

An intention to treat the service not as that of a public utility but as being limited by private contract could hardly be more clearly shown. The same intent was continuously and consistently expressed in every subsequent contract with prospective customers.

Other discriminations might be mentioned such as forcing customers to bear all costs of laterals with the agreement that they should immediately become the property of the city. But we think enough has been said to show that the operations of the city in the field do not carry the usual earmarks of a public utility. The city may have been justified in thus limiting service to nontaxpayers. But we must bear in mind the nature of its operations in considering its right to challenge the legality of the District's service as a public utility ready to serve all alike without regard to geographical location.

■ Whether a business operation may be classed as that of a public utility is controlled by the facts of a particular case. Generally, the question depends upon whether the operation has been held out as a public service, upon whether the service is in fact of a public character and whether it may be demanded on a basis of equality and without discrimination by all members of the public or obtained by permission only. 73 C. J. S., Public Utilities, Sec. 2, pp. 991, 993; 43 Am. Jur. 571-573, Public Utilities and Services, Sections 2, 3, 4.

■ A franchise may be defined as the grant of a right or privilege by the sovereign power usually with respect to streets or highways primarily to enable the grantee to perform a public service or benefit. It is not associated in meaning with a strictly private undertaking.

■ "The fact that a business or enterprise is, generally speaking, a public utility does not make every service performed or rendered by it a public service, with the consequent duties and burdens, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person." 73 C. J. S., Public Utilities, Sec. 9, p. 1003.

█ Applying the foregoing criteria we conclude that the city's operations in Carter County were carried on pursuant to private contracts for service; that it did not hold itself out as operating a public utility business in Carter County and that, a priori, it had no franchise entitling it to question the sufficiency of the notice of the hearing before the County Court or the validity of its decree. In this view it is unnecessary to decide whether, as the Chancellor held, the city is estopped under the doctrine of res adjudicata and in pais to question the franchise rights of the District.

Affirmed with costs to the city and remanded generally to the Chancery Court of Carter County.

Hale and Howard, JJ., concur.