Muscatine Water Company, Appellee, v. Muscatine Lumber Company, Appellant.

1. **Contracts:** PRIVATE CORPORATION: SEALS. A valid written contract may be made by a private corporation in this state without the use of a seal, even though such contract be one out of the ordinary course of the business of the corporation.

2. ———: MUTUALITY: SIGNATURE. A contract in the nature of a proposition, which is to be in full force when its terms are complied with by the opposite party, and which has been accepted, though not signed by the latter, is not void for want of mutuality.

3. ———: PUBLIC POLICY: VALIDITY. In consideration of the extension of the plaintiff's water mains to the defendant's place of business, and the maintenance of four hydrants thereat for fire protection, the defendant agreed to pay the plaintiff a stipulated sum annually. Under its contract with the city the plaintiff likewise received a specified sum annually for each of said hydrants, but it appeared that the plaintiff was under no obligation to make such extension under its agreement with the city, and that the extension would not have been made but for the additional compensation agreed to be paid by the defendant. *Held*, that under the circumstances the agreement was not void as being against public policy.

*Appeal from Muscatine District Court.*—Hon. C. M. Waterman, Judge.

Saturday, May 14, 1892.

Action to recover an amount alleged to be due by virtue of an agreement to extend the system of waterworks of the plaintiff to certain premises occupied by the defendant. There was a trial by the court without a jury, and a judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Richman & Burk* and *E. F. Richman*, for appellant.
*J. Carskaddan*, for appellee.

Robinson, C. J.—In the year 1882, the plaintiff owned and operated a system of waterworks in the city

of Muscatine, and the defendant owned a lumber mill and lumber yard situated on blocks numbered eighteen, nineteen and twenty, in the same city, between Front and Second streets, and on some lots north of Second street, opposite the blocks specified. On the sixteenth day of March, 1882, the board of directors of the plaintiff took action, shown by the minutes of its proceedings, as follows:

"Resolved, that the street mains be extended on Second and Cypress streets * * * (when authorized by the city council) * * * provided the Muscatine Lumber Company will, by proper instrument, entitled to be recorded, covenant and agree to pay to this company the sum of two hundred and fifty dollars per year for ten years succeeding the date when the water is turned on * * * and provided no liability be incurred by this company for any failure to keep a constant supply of water in such extension."

On the twenty-ninth day of the same month the board of directors of the defendant, as shown by the minutes of proceedings, took the following action:

"Mr. P. Musser reported that the waterworks company would extend the pipes, hydrants, and so forth, as asked for; the Muscatine Lumber Company to pay the waterworks company two hundred and fifty dollars per annum for ten years. Dr. Robertson moved that above proposition be accepted by the board. Same was unanimously agreed to. It was resolved that the whole matter of waterworks be left with the executive committee to arrange all details and special agreements with a like committee on the part of waterworks company."

On the eleventh day of the next month, the plaintiff was notified of the acceptance of its proposition, and a committee was appointed to draft a contract for execution by the defendant. On the twenty-fifth day of that

month, the committee reported an agreement for execution, which after amendment read as follows: "Whereas, it is proposed by the Muscatine Waterworks Company (provided said company be duly authorized so to do by the city council of the city of Muscatine) to extend the street main or pipe on Second street in said city from Oak to Cypress street, and thence on Cypress to Front street, and place on such extension four fire hydrants for fire protection, to-wit: one at the intersection of Second and Spring streets, one at intersection of Second and Poplar, one at intersection of Second and Cypress, and one at intersection of Cypress and Front streets; and whereas, said extension will be for the manifest advantage and benefit of the Muscatine Lumber Company, in affording protection from fire to its premises and property: Now, therefore, it is hereby covenanted and agreed by the said Muscatine Lumber Company to and with said waterworks company that in case the above named extension is made, and hydrants placed, the said lumber company shall and will, at the end of every year from the date at which the said extension is completed, and water turned on the same, ready for use for fire protection, at and from said hydrants, pay into the said waterworks company the sum of two hundred and fifty dollars ($250.00); such yearly payments to continue and be made for the full term of ten (10) years from the aforesaid date. And the said waterworks company shall incur no liability to the said lumber company for any failure to constantly keep and have a supply of water in the pipes and hydrants of said extension. In witness whereof, the said Muscatine Lumber Company has caused this instrument to be subscribed by the president and attested by the secretary thereof, this twenty-ninth day of April, 1882.

"Attest:  "J. S. Patten, President."
"S. B. Cook, Secretary.

It appears that the agreement as amended was signed in behalf of the defendant, by its president and secretary, on the twenty-ninth day of the month; and on the ninth day of the next month the plaintiff was informed that it had been executed, and directed its executive committee to order the necessary material for the extension. The extension was completed, and the hydrants placed as required by the agreement, in the spring or early in the summer of that year. The defendant paid to plaintiff the annual charge of two hundred and fifty dollars from the time the extension was completed, excepting for a short time in the year 1883 or 1884, when water was not supplied because of a broken pipe, for which the charge was remitted until the twelfth day of June, 1886. On that date the mill and lumber of the defendant were destroyed by fire. The fire also broke the extension at the crossing of Mad creek, but in July the plaintiff ordered the break to be repaired, and the repairs were made and connection restored by October. The annual charge has been paid to June 15, 1886; but the defendant has not rebuilt its mill, and has refused payment for charges accruing since the date named. This action is brought to recover the amount payable according to the terms of the agreement for the time commencing on the first day of October, 1886. The district court found in favor of the plaintiff for the amount claimed, and rendered judgment against the defendant for the sum of eight hundred and twenty-three dollars and twenty-five cents and costs.

I. The appellant contends that the contract in suit is invalid for the reason that no seal of either corporation is attached to it. Section 2112 of the Code contains the following: "The use of private seals in written contracts, except the seals of corporations, is abolished." It is argued from this that the use of private seals by cor-

1. CONTRACTS: private corporations: seals.

porations is governed by the rules of the common law, and that such seals must be affixed to all contracts not covering the scope of the ordinary, every-day functions of the corporations. That is not the law of this state. On the contrary, it was said in *Merrick v. Plank Road Co.*, 11 Iowa, 76, that "the doctrine is now well settled that corporations of all kinds may be bound by contracts not under their seal. They may make a binding contract in writing without using the seal, and so they may be held liable on verbal contracts; and as they may make, so they may ratify and adopt as their own, without the use of the seal, that which has been done by another, or an officer out of the usual line of his duties." In 1 Morawetz on Private Corporations, section 338, this language is used: "It is now a rule well settled throughout the United States that a corporation may make a contract without the use of a seal in all cases in which this may be done by an individual." A corporation organized under the laws of this state may have a common seal, but it is not required to have one; and it is a matter of common knowledge that corporations in large numbers organize and do business in the state, making contracts and conveying property, without using or having a seal. There is nothing in this case to show any requirement on the part of either party to the agreement in question that its contracts should be under seal, nor that either had a seal. There is no presumption, in the absence of evidence to that effect, that the agreement was invalid for want of a seal; and no presumption of that kind is raised by anything contained in the record.

II. It is said that the plaintiff was not bound by the agreement, and that the contract was not mutual, 2. ——: mutual- and therefore not valid. It is true that ity: signature. the contract did not, in terms, require the plaintiff to make the extension of its works contemplated, and it may not have incurred liability if it had

failed to make it. But the evidence shows that the contract was the result of negotiations between the parties, and that it was designed to be a formal offer on the part of the defendant, to be accepted by the plaintiff, and to be in full force when its terms were complied with by the plaintiff. It was in the nature of a continuing offer, which became vitalized as a contract by the performance of its condition on the part of the plaintiff.

It was not necessary that it be signed by both parties. It was formally entered into on behalf of the defendant by its president and secretary, and was accepted by the plaintiff, and the extension was made according to its terms. Under these circumstances it was not necessary that the instrument be signed on behalf of both parties to make it binding upon both. *Dows v. Morse*, 62 Iowa, 232. Moreover, the minutes of the proceedings of the board of directors of the plaintiff show an acceptance of the proposition, and the defendant has received and enjoyed the benefit it was designed to confer.

III. In addition to the annual charge which the contract required the defendant to pay, the plaintiff, under its contract with the city of Muscatine, received from it sixty dollars annually for each hydrant included in the extension. These hydrants were intended for use as fire hydrants, for the protection of property in the city, including the mill and lumber yard of the defendant, against fire. The defendant had no use of the hydrants, excepting that to which the city was entitled, and had no private use of the water furnished by the extension. It is argued from these facts that the plaintiff exceeded its power in exacting from the defendant a contract to pay a sum in addition to that paid by the city; that it was against public policy for the plaintiff to contract for compensation for the use of the

3. ——: public policy: validity

hydrants in addition to that paid by the city; and that there was no consideration for the contract on the part of the defendant.

If it were true that the extension would have been made without the contract, or that the plaintiff was under obligation to make it in consequence of its agreement with the city, there would be much force in the claims of the defendant. The contract recites, in effect, that the plaintiff proposes to make the extension; but, when the negotiations of the parties are considered, it is clear that the purpose was entertained only in consequence of the proposal of the defendant to give the sums named in the contract in addition to those for which the city would be liable in case the extension should be made. The showing made by the evidence is supplemented by a stipulation made by the parties, that the extension would not have been made but for the agreement of the defendant to pay the extra sum specified. Nothing in the record, aside from the agreement in suit, shows any obligation on the part of the plaintiff to make the extension. The expense of making it may have been large, and the private consumers of water to be expected by reason of it may have been few, if there were any. The prospect of revenue from it, as compared with the expense of constructing and maintaining it, may have been such that no prudent business man would have made it but for the extra compensation promised. The evidence justifies the conclusion that the defendant was the one chiefly interested in the extension, and probably the only one who would be benefited by it. As the plaintiff was under no obligation to make the extension, it was competent for the defendant to offer an inducement in the form of a promise to pay stipulated sums of money to have the extension made. What amount it could afford to pay was a matter for it to decide, but, in agreeing to pay the amount in controversy, it acted

on a legal consideration, presumably for its own interest. The amount agreed upon was not a mere gratuity, but was for value, in the form of additional security against fire. There was nothing in the transaction contrary to public policy, nor did the plaintiff exceed its just powers in executing the contract.

The judgment of the district court is AFFIRMED.