NORTHERN NATURAL GAS COM-
PANY, Appellant,

v.

ROTH PACKING COMPANY, Appellee.

ROTH PACKING COMPANY, Appellant,

v.

NORTHERN NATURAL GAS COM-
PANY, Appellee.

Nos. 17240–17244, 17304–17307.

United States Court of Appeals
Eighth Circuit.

Oct. 25, 1963.

James W. R. Brown, Omaha, Neb., F. Vinson Roach and Ralph P. Blodgett, Omaha, Neb., Emmet Tinley, Council Bluffs, Iowa, and James J. Fitzgerald, Jr., and Joseph J. Barmettler, Omaha,

Neb., on the brief, for Northern Natural Gas Co.

L. J. Tierney, of Cassem, Tierney, Adams & Henatsch, Omaha, Neb., and Keith Howard of Story, Pilcher, Howard & Hickman, Omaha, Neb., Harry Welch, of Gross, Welch, Vinardi, Kauffman & Schatz, Omaha, Neb., on the brief, for Roth Packing Co.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Timely appeals separately taken by Northern Natural Gas Company (Northern) and Roth Packing Company (Roth) from final judgments [1] entered by the district court in these five consolidated cases are before us for consideration.

Separate complaints were filed by Rabbi Block, an independent contractor with respect to kosher meat, and by four of Roth's employees wherein they sought compensation for injuries caused by an explosion of gas on Roth's premises, the gas having leaked from a private pipe line leading to Roth's plant. The gas was furnished by Northern by virtue of a contract and delivered to Roth's pipe line at a meter located some one-half mile distant from the plant. Liability was predicated on negligence. Rabbi Block sued both Roth and Northern. The employees' actions were brought against Northern alone. Northern brought in Roth as a third party defendant. Jurisdiction, based upon diversity of citizenship, is established.[2]

Pursuant to stipulation, the claims of Rabbi Block and the four employees have been settled, Roth paying $5,000 on the Rabbi Block settlement and Northern having paid the balance required to settle all the claims. Such settlements were made without prejudice to the rights of Northern and Roth as against each other.

---

1. While the five cases were consolidated for trial and were covered by one memorandum opinion (not reported), separate judgment entries were made in each case.

2. All complaints were filed before July 25, 1958, the effective date of the 1958 amendment to 28 U.S.C.A. § 1332.

The issues remaining in these cases are those relating to the claims of Roth and Northern against each other. Such issues which were tried to the district court without a jury may be briefly summarized as follows:

1. Roth's claim that Northern by reason of its negligence was liable to it for damages caused by the explosion to its buildings and personal property and for business interruption, and Roth's additional claim that it was entitled to reimbursement for the $5,000 that it had paid on the claim of Rabbi Block.

2. Northern's claim that it was entitled to indemnity from Roth for all sums it had paid in settlement of the claims of Rabbi Block and the four employees. Northern's position is that it is entitled to indemnity on the basis of a valid contract of indemnity, and alternatively, that it is entitled to relief upon the basis of equitable indemnity.

The trial court in its memorandum opinion thoroughly discusses the evidence bearing on negligence and concludes: "It is our opinion that the joint or concurrent negligence of Northern and Roth cause[d] the explosion and resulting damages."

Northern's negligence is based upon its unreasonable delay in answering a service call to check the leak which call it had accepted. Northern, on these appeals, accepts the court's finding that it is negligent. Roth's negligence is based upon its failure to exercise reasonable care to provide for the safety of its employees and business invitees upon the premises. Roth challenges the finding that it is negligent.

The court denied Roth's claim for damages to its property and for business interruption and denied its claim for recovery of the $5,000 it had paid on the $30,000 settlement made with Rabbi Block. The court required Roth to pay Northern $10,000 as the balance of its half share of the settlement made of the Rabbi Block claim. Roth has appealed from the foregoing provisions of the judgment.

Northern's appeal is from the denial of its claim for contractual indemnity and equitable indemnity. The claims and defenses with respect to such issues will appear in the course of this opinion.

This is a diversity case. The explosion occurred in Iowa; the asserted indemnity contract appears to have been made in Iowa. The parties agree that Iowa law controls.

## I.

■■ We shall first consider Roth's appeal. Under Iowa law, the burden is upon the claimant to prove as an essential element of his cause of action that he is free from negligence on his part which contributes in any way or in any degree to his damage and injury. Beezley v. Kleinholtz, 251 Iowa 133, 100 N.W.2d 105, 107. The court found that Roth was guilty of such negligence. This finding, if supported by substantial evidence, precludes any recovery by Roth on its claim for damages.

■ A careful review of the entire record convincingly establishes that the court's finding of negligence on the part of Roth, which contributed to its injury, is supported by substantial evidence. No purpose will be served in setting out the rather extensive evidence bearing upon this issue. The trial court's memorandum opinion demonstrates that its negligence findings are supported by substantial evidence. The trial court's denial of Roth's claim for property damage and business interruption is affirmed.

The remaining issues raised by Roth's appeal are covered and controlled by our disposition of the indemnity issue raised by Northern's appeal. Our findings on that issue, that contractual indemnity exists, affords an additional basis for affirmance on Roth's appeal.

## II

Northern's principal point in support of its appeal is that the trial court erred in denying it contractual indemnity. Northern in support of its claim for contractual indemnity relies upon a contract

entered into between Northern and Roth on December 15, 1954,[3] and particularly paragraph 3 thereof reading:

"Company agrees to exercise due diligence in maintaining delivery of natural gas but does not guarantee an uninterrupted delivery. It is *expressly agreed* that Company shall not be held liable in damages or otherwise for any interruption or failure, in whole or part, in gas delivery; *nor shall Company be liable for damages to persons and/or property* due to or on account of any such interruption or failure in gas delivery, or *due to, or on account of any leakage or escape of gas or in any manner connected with the transportation or handling thereof beyond point of delivery to Customer hereunder, which point is hereby mutually agreed to be at Outlet of meter.*" (Emphasis added.)

■■ The district court found that the purpose of this contract "was to save the gas company harmless from any obligation to respond for damages to persons and property, and that insofar as this was the intended effect, the provision was and is invalid and void."

Although we agree with the interpretation of the purpose of this contract, we do not agree with the conclusion that it is invalid. Inasmuch as the precise reason for voiding the contract is not clearly set out or explained in the court's opinion, we shall attempt to dispose of the attacks upon its validity as they are made in Roth's brief. We have heretofore upheld the trial court's determination that both Roth and Northern were guilty of negligence which caused the injuries here involved and such finding, so far as material, applies to the indemnity issue. Roth's defense to the contractual indemnity claim is thus summarized in its brief: "The contract * * * does not constitute an indemnity agreement.

It does not exempt the gas company from the consequences of its own negligence and is void as against public policy." Roth claims that a contract of indemnity must contain language which clearly shows an intention to indemnify against a certain loss or liability. The lack of the words "negligence" and "indemnity" in the contract in question is pointed out.

In Fire Association of Philadelphia v. Allis Chalmers Mfg. Co., N.D.Iowa, 129 F.Supp. 335, a case involving Iowa law, Judge Graven extensively reviews the pertinent authorities bearing on the requisites of an indemnity contract and states:

"It seems clear that it is not necessary that the parties make use of the word 'negligence' in a provision in order to make the provision applicable to a party's own negligence and that it is sufficient if the parties by 'apt language' include such negligence." 129 F.Supp. 335, 355.

In that case Judge Graven went on to hold that under Iowa law the supplier and Iowa Public Service Company could validly contract to limit the liability of the supplier for negligence in the furnishing of equipment and that the words used in the contract are to be given their usual and ordinary significance and that when such test is applied, the contract provision would exempt the supplier from liability for its own negligence.

In Weik v. Ace Rents, Inc., 249 Iowa 510, 87 N.W.2d 314, plaintiff lessee sought to recover against his lessor for injuries caused by a defective mower delivered to him pursuant to the lease upon the basis of negligence. The lease provided that the lessee "exonerate, indemnify, and save harmless the company from all claims and liabilities to all parties for damage or loss to any person, persons or property in any way arising out of or during the use of said

3. The pipe line into the packing plant was installed about 1947 pursuant to a contract between Northern and Schroeder Packing Company. When Roth took over the operation of the packing plant, it entered into a written contract with Northern which contained substantially the same provisions with respect to indemnity as are contained in the Schroeder contract.

equipment." The Iowa court upheld the dismissal of the negligence action upon the basis that the quoted provision indemnified the lessor from the consequences of his own negligence. The court, in response to plaintiff's contention that the contract provision against responsibility for one's own negligence should be strictly construed and that instruments should be strictly construed against the party preparing them, holds:

"The foregoing statements are correct. However, they are expressly limited to instruments and contract provisions which are subject to construction. The text in 17 C.J.S. Contracts § 294, p. 683, states: 'A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language * * *.' Here the intention of the parties is expressed in language so clear and unambiguous that the contract is not properly subject to construction." 87 N.W.2d 314, 317.

This court in Anthony v. Louisiana & Arkansas Ry. Co., 8 Cir., 316 F.2d 858, had before it the construction of a contract under Arkansas law relating to a spur track built for a shipper. The railroad asserted such contract contained provisions indemnifying it from liability, including that occasioned by its own negligence. There was no express provision indemnifying against negligence nor was the word "indemnity" used in the provision in question. We held the railroad to be entitled to indemnity and with respect to rules of construction stated:

"The rules governing the requisites, validity and construction of contracts generally apply to indemnity contracts. 42 C.J.S. Indemnity § 5, p. 569, states:

" 'The language employed must clearly and definitely show an intention to indemnify against a certain loss or liability; otherwise it is not a contract of indemnity, as where the terms of the contract clearly show, not an intention to indemnify, but a direct promise to pay a certain sum of money or to perform a certain act. If the intention to indemnify is reasonably clear, however, it is not necessary that the contract should be drawn in any particular form of words or be expressed in technical terms. If the intention to indemnify is apparent from the whole instrument, it will be construed as a contract of indemnity, although it is called by some other name by the parties.' " 316 F.2d 858, 863–864.

Cases relied upon by Roth, such as Chicago, Rock Island and Pacific R. Co. v. Williams, 8 Cir., 245 F.2d 397, and Ocean Accident & Guarantee Corp. v. Jansen, 8 Cir., 203 F.2d 682, are so readily distinguishable factually from our present situation as to afford no support for Roth's position.

On the basis of authorities we have cited, it is our opinion that the contract provision relied upon by Northern is not ambiguous. It clearly provides that Northern would not be liable for damages "due to, or on account of *any* leakage or escape of gas or in any manner connected with the transportation or handling thereof beyond point of delivery to Customer hereunder, which point is hereby mutually agreed to be at Outlet of meter." The meter referred to was located just inside the city limits of Glenwood. The gas became the property of Roth after it passed through the meter. The pipe line that transported the gas ran about one-half mile beyond the city limits to Roth's plant. Such line was on Roth's land or over easements acquired and owned by Roth.

The language just quoted would have no meaning or serve no purpose other than to free Northern from liability for gas leakage occurring beyond its meter if it was not intended by the parties to relieve Northern of liability for gas leaks under all circumstances, including those contributed to by its own

negligence. It is difficult to conceive of any basis of liability on Northern's part for damage for leakage occurring on Roth's pipe line on Roth's property except upon the basis of some negligence on Northern's part.

■■ Moreover, if contrary to what we have just said, some ambiguity can be found in the pertinent contract provision, we again observe that the trial court construed the contract as protecting Northern from liability for its own negligence. The burden is upon Roth to show that the conclusion reached by the trial court as to the interpretation of the contract is irrational, illogical, unsound or contrary to law. See American Indemnity Co. v. Swartz, 8 Cir., 250 F.2d 532, 536. Such burden has not here been met.

This brings us to the question of whether the court rightly determined that the indemnity provision of the contract is void as against public policy. In support of such conclusion, the trial court in its decision and Roth on its appeal rely upon Fairfax Gas & Supply Co. v. Hadary, 4 Cir., 151 F.2d 939; Fire Association of Philadelphia v. Allis Chalmers Mfg. Co., supra; and Restatement Contracts §§ 574–575. Fairfax does not support the trial court's decision. The court in that case sets out § 575 of the Restatement of Contracts, intimates that the customer was under some compulsion as Fairfax was the only supplier of the type of bottle gas that could be used in the customer's appliance, and discusses but does not take a definite stand on whether public service was involved. Fairfax discovered a serious leak while installing a new gas cylinder at the customer's home. Instead of repairing the leak or warning the customer of the dangerous condition, a note was left instructing the customer how to turn on the gas. When the customer followed such direction, the explosion occurred. The court's decision turns upon a finding that either gross negligence or wanton or wilful misconduct barred the supplier from claiming the benefit of the negligence exculpation provision, as is reflected by the following language:

"Even then if it be the rule that a purely private contractor may by contract generally relieve itself of liability for mere negligence, such a rule, we think, should have no application to the facts of the instant case. To us, the conduct of Fairfax may certainly be called gross negligence; perhaps we may go further and state that it closely verges on, if it does not actually attain, the quality of wantonness. Our social conscience is shocked at the idea that Fairfax should be here permitted to hide behind the beneficent shield of contract. Common humanity would seem to require, contract or no contract, that Hadary should be apprised by Fairfax of what it knew was a danger, both real and imminent." 151 F.2d 939, 942.

■ The trial court in the present case in its opinion quotes apparently with approval from Judge Graven's opinion in Fire Association of Philadelphia, as follows:

" * * * Sections 574 and 575 of Restatement, Law of Contracts, are as follows:

"§ 574.

" 'A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575.'

"§ 575.

" '(1) A bargain for exemption from liability for the consequences of a willful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

* * * * *

" '(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any

part of its duty to the public, for which it has received or been promised compensation.'

"It is believed that the Iowa law is in accord with those sections."

The Iowa court in Weik, supra, cites Fire Association of Philadelphia and the quoted restatement provisions as representing the Iowa law in support of its decision. In rejecting a contention that contracts exempting one from liability for his own negligence are against public policy, the court states:

"Subject to certain exceptions, based upon the public interest, statutory prohibitions, etc., not here present, the rule to the contrary is well settled. Sears, Roebuck and Company v. Poling, 248 Iowa 582, 81 N.W.2d 462, 465, cites various authorities enunciating the rule, and states:

"'Indeed the public policy of freedom of contract is best served by enforcing such a provision.'" 87 N.W.2d 314, 317.

We believe that the trial court here reached a permissible conclusion in determining that the quoted provisions of Restatement of Contracts §§ 574–575 represent the applicable law.

The trial court then quotes a statement from Roth's brief reading:

"Certainly whether Northern's relationship with Roth gives rise to what is termed to be a public or private duty, it is affected with the public interest which requires its diligent performance."

As nearly as we can surmise, the court thereby intended to determine that the indemnity provision relating to exemption from Northern's liability for its own negligence was against public policy as it related to the performance of a duty to the public within the meaning of § 575(b) of the Restatement. In any event, we find no basis for denying Northern the benefit of its indemnity contract upon the theory that Northern violated its duty to the public or upon any other sound legal basis.

While Northern served the city of Glenwood as a public utility, its public utility obligation did not exist with respect to Roth's plant beyond the city limits. Roth's counsel at the trial correctly took the position that the Glenwood franchise had no bearing upon Northern's obligation to serve Roth. Northern served the Roth plant only by virtue of the private contract.

The Fire Association of Philadelphia case supports the view that a public utility can enter into private contract in fields not covered by its utility obligation. In the analogous situation of common carriers, we have held that a carrier in undertaking a contractual obligation beyond that imposed upon it as a common carrier may by private contract exempt itself from liability for its own negligence and that such contract is not against public policy. Anthony v. Louisiana & Arkansas Ry. Co., 8 Cir., 316 F.2d 858, affirming 199 F.Supp. 286, W.D. Ark.; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. R., 8 Cir., 199 F.2d 725.

We believe there was no public duty involved in the instant case which would take the indemnity provision out of the domain of private contractual law. The fact that the franchise pertained only to customers within the city limits has been interpreted as meaning that the public utility has no duty to deliver gas to one outside the city. Oklahoma Natural Gas Co. v. Scott (In re Vance), 115 Okl. 8, 241 P. 164. In Johnson City v. Milligan Utility District, 38 Tenn.App. 520, 276 S.W.2d 748, the court held that the city acted under a private contract and not as a public utility in serving customers outside the city limits. The situation in the instant case seems to be adequately covered by that court which stated at page 753 of 276 S.W.2d:

"Whether a business operation may be classed as that of a public utility is controlled by the facts of

a particular case. Generally, the question depends upon whether the operation has been held out as a public service, upon whether the service is in fact of a public character and whether it may be demanded on a basis of equality and without discrimination by all members of the public or obtained by permission only. 73 C.J.S., Public Utilities, § 2, pp. 991, 993; 43 Am. Jur. 571–573, Public Utilities and Services, Sections 2, 3, 4.

"A franchise may be defined as the grant of a right or privilege by the sovereign power usually with respect to streets or highways primarily to enable the grantee to perform a public service or benefit. It is not associated in meaning with a strictly private undertaking.

" 'The fact that a business or enterprise is, generally speaking, a public utility does not make every service performed or rendered by it a public service, with the consequent duties and burdens, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person.' " 73 C.J.S. Public Utilities § 9, p. 1003.

Since Northern was under no obligation to extend its pipe line beyond the city limits, it would seem proper for the provision of indemnity to be included in the contract as an inducement to have the extension made. See Muscatine Water Works Co. v. Muscatine Lumber Co., 85 Iowa 112, 52 N.W. 108, 110.

It is further urged that it is against public policy to enforce an indemnity contract such as this where the party indemnified commands a superior bargaining position. Fairfax Gas contains some language supporting such a contention but the case does not appear to have been decided upon such a theory. No authorities have come to our attention which show this to be the law of Iowa. We need not decide what the

Iowa law on this subject may be as we are convinced that Roth has not established that Northern occupied a superior bargaining position. The record shows that Roth could have negotiated with other gas distributors, one of whom was located less than a mile from the plant and another not more than four miles away. Roth was also equipped to operate on oil as a substitute fuel. The pipe line was constructed at cost. It is not claimed that the rates or any other terms of the contract are oppressive or unreasonable. There is also substantial testimony that Northern uniformly insisted on the indemnity provision in private contracts and that it would not enter into a private contract without such a provision.

Some claim is made that Northern was guilty of gross negligence such as to bar its right to claim indemnity. The trial court made no finding that Northern's negligence is gross negligence nor is there any substantial evidentiary basis which would support such a finding.

On the contractual indemnity claim, we are not confronted with the problem of whether the negligence of the respective parties was active or passive, or primary or secondary. In contractual indemnity, liability is controlled by the provisions of the contract. See Anthony v. Louisiana & Arkansas Ry. Co., supra, 316 F.2d p. 866 and authorities there cited.

We hold that the indemnity provision of the contract by its terms exempts Northern from liability for its own negligence and that such provision is not in violation of public policy but is valid and enforceable. The trial court erred in holding otherwise. Northern by virtue of the indemnity provisions in its contract is entitled to full indemnity from Roth for all sums it paid Rabbi Block and the claimant employees of Roth.

The trial court made no express finding on Northern's claim based on equitable indemnity. Our holding for Northern upon the contractual indemnity is-

**930**

sue eliminates any necessity for considering the equitable indemnity issue.

### III.

 Roth in the trial court raised the issue that the Iowa Workmen's Compensation Act limits the right of a third party such as Northern to recover indemnity from the employer of an injured employee. There is language in the trial court's opinion which tends to indicate that the trial court relied upon such defense, at least in part, in reaching its decision.[4] Any uncertainty which may have previously existed upon this issue has been cleared up by the decision of the Supreme Court of Iowa in Blackford v. Sioux City Dressed Pork, Inc., 118 N.W.2d 559, which was handed down since the trial court's decision. The Iowa court there adopts the view of the Iowa law as expressed by this court in American District Telegraph Co. v. Kittleson, 8 Cir., 179 F.2d 946, and holds that the Iowa Workmen's Compensation Act does not bar an action by a third party for indemnity against an employer who has compensated the injured employee under the Workmen's Compensation Act. Said case discusses quite fully the impact of the Iowa Workmen's Compensation Act, concluding:

"The cross-petition is not based on a claim of negligence of the employer which injured the employee, but upon a breach of an implied contract to do the work safely. Nor do we see any language in the statute which compels a holding that it was intended in any way to limit or take away the rights of third parties. As the Minnesota court

said, the third party has gained nothing by the statute, and should not be deprived of a right otherwise held at common law. An intention of the legislature, in enacting a statute for the regulation of rights between the employer and employee, to destroy the rights of third parties should at the very least be clearly expressed. There is no such expression here." 118 N.W.2d 559, 565.

In our present case, we have determined that Northern has established that Roth has contracted to assume responsibility for the safe maintenance of the gas line beyond the meter and to indemnify Northern against any claims for damages caused by gas leaks. Clearly the Iowa Workmen's Compensation Act as interpreted by the Iowa court in no way impairs Northern's right to enforce contractual indemnity.

Upon Roth's appeal, the judgment of the trial court denying Roth's claim for damages is affirmed, and the judgment allowing Northern contribution with respect to the claim of Rabbi Block is vacated by reason of the allowance of full indemnity with respect to such claim as the result of Northern's appeal.

On Northern's appeal, the judgment is reversed. This case is remanded to the trial court with direction to enter judgment for Northern against Roth for full indemnity for the sums it has paid on the claims of Rabbi Block and the four employees, with interest on such payments from the date the payments were made at the rate of 5% per annum. Costs are taxed to Roth.

---

4. The court allowed Northern contribution with respect to the claim of the independent contractor but denied relief with respect to the employees. Such holding can apparently only be explained upon the basis that the Iowa Workmen's Compensation law bars contribution against an employer with respect to claims of employees based upon negligence.