**NEBRASKA INNKEEPERS, INC., Ted C. Carlson, Beverly Zagozan, and W.A. Klinger, Inc., Individually and on behalf of all others similarly situated, Appellants,**

v.

**PITTSBURGH–DES MOINES CORPORATION, Appellee.**

No. 83–566.

Supreme Court of Iowa.

Feb. 15, 1984.

A.J. Stoik and Douglas L. Phillips of Blair, Stoik & Phillips, Sioux City, for appellants.

Michael A. Nelsen and John R. Timmermier of Schmid, Ford, Mooney & Frederick, and John M. Burns, Omaha, Neb., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

McGIVERIN, Justice.

Plaintiffs seek recovery from defendant bridge contractor for purely economic loss incurred due to the alleged nonintentional harm to a bridge, which resulted in its closing. The bridge served as an artery of commerce to those claiming the loss. Plaintiffs had no ownership in the bridge, sustained no physical injury or damage to their property or person, and had no contractual arrangement with the alleged wrongdoer. The trial court sustained defendant's motion for summary judgment and denied plaintiffs' claims. Upon plaintiffs' appeal, we affirm.

The Siouxland Veteran's Memorial Bridge spans the Missouri River linking Sioux City, Iowa, and South Sioux City, Nebraska. It was constructed between the spring of 1977 and the summer of 1981 and was then opened for public traffic.

On May 6, 1982, cracks were discovered in a steel structural member of the bridge, rendering it unsafe. The bridge was then closed to traffic.

Defendant Pittsburgh-Des Moines Corporation allegedly was the prime contractor and fabricated and sold the structural steel members used in construction of the bridge.

Plaintiffs are connected with a motel and restaurant known as the Marina Inn in South Sioux City, Nebraska. They brought an action for $65,000,000 against defendant for themselves and all other persons in Sioux City and South Sioux City connected with restaurants, bars, motels and other retail establishments sustaining damages as a result of the closing of the bridge to traffic.

Plaintiffs' petition against defendant sought recovery on the theories of ordinary negligence, res ipsa loquitur, strict liability in tort, and breach of implied warranty of merchantability and fitness for a particular purpose in connection with the manufacture or fabrication of the steel structural members and in the erection of the bridge.

After discovery by answers to interrogatories and requests for admissions, it was established that plaintiffs had suffered only economic loss and no physical injuries to their persons or property as a result of the bridge closing.

The record showed the following relative to the named plaintiffs. Nebraska Inn-

keepers, Inc., a Nebraska corporation, operates the Marina Inn, a restaurant-motel complex in South Sioux City. It claims lost past and future profits and diminution in value of its motel and restaurant business. Ted C. Carlson, the president of the corporation, claims diminution in value of his investment interest in Nebraska Innkeepers, Inc. Beverly Zagozan resides in Sioux City, Iowa, and works as a waitress at the Marina Inn and receives tips and gratuities from patrons. She commutes to work daily. She claims lost income and increased commuting expenses. W.A. Klinger, Inc., an Iowa corporation, owns the motel complex and claims loss of rental income and diminution in value of its real estate.

Defendant filed a motion for summary judgment, Iowa R.Civ.P. 237, on the ground that plaintiffs were not entitled, in the absence of physical injury to their property, to maintain claims for solely economic losses allegedly sustained as a result of the closing of the bridge. The record consisted of the pleadings and defendant's interrogatories and requests for admissions and plaintiffs' answers thereto. The court sustained the motion. The court noted, "It is conceded that plaintiffs suffered only economic loss due to the bridge closing." The court held in substance that plaintiffs could not recover for unintentionally caused economic harm, at least in the absence of such factors as ownership of the bridge, physical injury or damage to property, or a direct contractual relationship with defendant.

Plaintiffs appealed and contend: (1) that a tort claim should be recognized for negligently caused purely economic loss sustained as a result of a bridge closing; and (2) that the absence of a genuine issue of material fact was not established with regard to plaintiffs' claims based on breach of warranty. They also assert for the first time on appeal that they are entitled to recovery based on a public nuisance theory.

I. *Negligence theory.* Plaintiffs contend they should be able to recover for their purely economic or business losses sustained as a result of non-intentional harm to a public bridge, resulting in its closing, even though no physical or direct harm occurred to their property or persons. Plaintiffs' claimed damages consist of economic loss such as reduced income, increased expenses, and diminution of the value of investments resulting from the closing of the bridge.

This is a question of first impression in Iowa. Therefore, we will examine cases from other jurisdictions that have considered the matter. The cases uniformly hold that a person who sustains economic loss only cannot recover in damages from persons whose negligent conduct damages bridges, regardless of how vital to the claimant be the flow of commerce that is interrupted. Exceptions to that general rule such as ownership of the bridge, physical injury or direct damages to the claimant's property or person, or a direct contractual relation with the alleged wrongdoer are not factually present here.

■ The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290, 292 (1927); *General Foods Corp. v. United States*, 448 F.Supp. 111, 112 (D.Md.1978). This general rule of law has been followed by the vast majority of courts confronted with a claim for economic damages resulting from a bridge closing proximately caused by another's negligent actions.

In *Rickards v. Sun Oil Co.*, 23 N.J.Misc. 89, 41 A.2d 267 (1945), plaintiffs were owners and operators of business establishments who were seeking to recover "losses from expectant gains" from defendant whose barge negligently crashed into and damaged a drawbridge which served as the only means of access to the island on which plaintiffs' business premises were situated. In granting defendant's motions to strike plaintiffs' individual complaints, the court held that "[defendant's] negligent action may be a cause of injury to the plaintiffs, but it is not the natural and proximate

effect of such negligence and therefore not actionable."

In *Petition of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir.1968), claimants Cargill, Inc. and Cargo Carriers, Inc. were engaged in the business of shipping grain on the Buffalo River in New York and sought to recover expenses incurred as a result of a destructive chain of events on the river. In January of 1959, a ship owned by the Kinsman Transit Company, moored at a dock owned by Continental Grain Company, was forced adrift on the river by an ice jam. As the ship proceeded downstream, it struck another ship, causing the other ship to break free from its mooring. The two ships continued downstream until they collided with a bridge owned by the City of Buffalo. Falling bridge towers damaged adjacent property and injured two persons. The two ships and the falling bridge created a dam that caused flooding upstream which physically damaged upstream property. As a result of this chain of events both the bridge and river were temporarily closed to public use.

In a prior lawsuit, Kinsman Transit Company, Continental Grain Company, and the City of Buffalo were all found negligent. See *Petition of Kinsman Transit Co.*, 338 F.2d 708 (2nd Cir.1964), *cert. denied*, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965). The owners of the second ship, the landowners suffering direct property damage by the falling bridge, and the landowners of the flooded acres upstream were allowed to recover for the direct physical damage to their property. *Id.* The two individuals who suffered personal injuries from the falling bridge were also allowed to recover for their personal injuries. *Id.*

As a result of these events, claimant Cargill suffered additional expenses for transportation and storage of grain when it was forced to purchase wheat elsewhere to fulfill a contract. Cargill would have used wheat stored aboard a ship to complete the contract, but the ship could not reach Cargill's elevators due to the closed river.

Cargo Carriers' losses arose out of the unloading of a ship that had been struck by one of the two drifting ships and knocked from its dock. Before the ship could be returned to the dock, an ice jam formed between the ship and the dock, making normal unloading impossible. Cargo Carriers sought to recover expenses incurred in renting special equipment to complete the unloading of the ship over the ice.

The court noted that claimants had not suffered any direct or immediate property damage and held, in affirming the trial court's entry of an order dismissing plaintiffs' claims, that "the connection between defendants' negligence and the claimants' damages is too tenuous and remote to permit recovery." *Kinsman*, 388 F.2d at 825.

In *General Foods Corp. v. United States*, 448 F.Supp. 111 (D.Md.1978), plaintiff sought to recover economic damages, from defendants Penn Central Transportation Company and the United States, for its injuries arising out of the closing of the Penn Central Railroad Bridge over the Chesapeake and Delaware Canal which was caused by the SS YORKMAR ramming into it. The court granted the motion by defendant United States to dismiss plaintiff's complaint based on its holding that economic losses suffered by the plaintiff in conducting its business, even if proven, are not recoverable damages as a matter of law. Relying on *Kinsman*, the court said that "even if General Foods is a foreseeable plaintiff, recovery will be denied" because "'the law does not spread its protection so far.'" *Id.* at 114, 116 (quoting *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. at 309, 48 S.Ct. at 135, 72 L.Ed. at 292). The court noted an underlying rationale for its decision as follows:

Courts which have addressed this issue have repeatedly expressed concern that a contrary rule would open the door to virtually limitless suits, often of a highly speculative and remote nature. Such suits would expose the negligent defendant to a severe penalty, and would produce serious problems in litigation, particularly in the areas of proof and apportionment of damages.

*Id.* at 113.

In *In re Marine Navigation Sulphur Carriers, Inc.*, 507 F.Supp. 205 (E.D.Va.

1980), *aff'd* 638 F.2d 700 (4th Cir.1981), a bridge was closed due to the negligence of defendants, owners and operators of a vessel that crashed into the bridge. The original action included numerous claims for damages that arose from the incident including property damage to the bridge, personal injury, property damage due to the loss of automobiles that fell from the bridge, and economic loss to businesses. Defendants filed a motion to dismiss the claims of those plaintiffs who alleged only economic losses arising out of the temporary closing of the bridge and river. Economic damages asserted included interference with contractual obligations, loss of business expectancies and increased business expenses. The appellate court affirmed the district court's dismissal of plaintiffs' claims for economic damages noting, in reliance upon *Kinsman*, that "[t]he economic, non-physical losses as alleged were too remote to be legally compensable." *Id.* at 702.

The most recent bridge case, *Leadfree Enterprises, Inc. v. United States Steel Corp.*, 711 F.2d 805 (7th Cir.1983), is factually indistinguishable from the present case and was relied upon by the district court in its ruling. In *Leadfree*, defendants Allied Structural Steel Co. and Inryco, Inc. contracted with Iowa and Wisconsin to construct a bridge over the Mississippi River between Marquette, Iowa and Prairie du Chien, Wisconsin. Defendant United States Steel provided the steel used in the construction of the bridge. A crack was discovered in an arch of the bridge and subsequent testing indicated that the steel was of inferior quality. The bridge was closed seven months while repairs were made and structural supports added.

Plaintiffs Leadfree Enterprises, Inc. and its president, Larry White, brought an action on behalf of the class of people who suffered incidental and consequential damages as a result of the closing of the bridge. They sought $75,000,000 from defendants asserting that the closing of the bridge caused them loss of business, employment, income, time, and "numerous personal activities and opportunities."

They asserted six claims based upon breach of warranty, negligence, and product liability theories. They did not contend that they suffered any physical damage to their property or injury to their person, nor that they had any property interest in the bridge.

Defendants filed motions to dismiss for failure to state a claim on which relief can be granted. These motions were granted by the federal district court which held that under Wisconsin law a plaintiff cannot recover unless he has suffered physical injury to something in which he has at least some ownership or property interest. The district court noted that allowance of a claim for purely economic damages arising from another's negligent actions would "enter a field that has no just or sensible stopping point."

The Court of Appeals for the Seventh Circuit affirmed the district court's dismissal noting that "[i]n the economic injury case, there is less a fear of fraudulent claims than a sense of wanting to have a sensible stopping point in order to preclude open-ended, crushing liability on a tortfeasor." *Id.* at 808.

█ The common thread running through these cases establishes unequivocally that a plaintiff cannot recover for purely economic loss, in the absence of physical injury, against a defendant who has negligently caused the closing of a public bridge or river. We conclude that these authorities are persuasive on the present issue before us and, accordingly, hold that plaintiffs cannot maintain a claim for purely economic damages arising out of defendant's alleged negligence because it lacks a legal foundation to support it. *Cf. State v. F.W. Fitch Co.*, 236 Iowa 208, 215–16, 17 N.W.2d 380, 384–85 (1945) (State not entitled to recover costs of maintaining a detour around one of its bridges that was closed due to defendant's alleged negligence causing damage to the bridge).

Plaintiffs argue that the rule barring recovery for negligently caused economic damages was rejected by this court in

*Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10 (Iowa 1975). Their argument, however, expresses an overly broad interpretation of the holding in that case. In *Schiltz,* a contractor brought an action against a consulting engineering firm for damages arising out of the firm's alleged negligence in designing a sewage treatment facility. The contractor had partially constructed the facility when it was severely damaged by a flood. Due to the flooding, the aeration tanks had to be completely demolished, removed and reconstructed. In addition to reconstruction expenditures, the contractor expended large sums for rental equipment and cleanup operations. We held that, "Expenses incurred for rental equipment and cleanup operations are an integral part of the *direct property damage* incurred." *Id.* at 21 (emphasis added). Thus, *Schiltz* is clearly distinguishable from this case in that the contractor's added expenses were not purely *economic* in nature but rather were an integral part of his direct or physical *property* damage. We, therefore, conclude that *Schiltz* is not controlling authority for this issue.

II. *Breach of warranty theory.* Plaintiffs also contend that the absence of a genuine issue of material fact, Iowa R.Civ.P. 237(c), was not established with regard to their claims based on breach of warranty and, therefore, defendant should not have been granted summary judgment.

Plaintiffs' petition alleged that defendant breached its warranties of merchantability and fitness for particular purposes in regard to the steel structural members of the bridge and that plaintiffs, as third party beneficiaries pursuant to the Uniform Commercial Code, Iowa Code section 554.2318, were entitled to be compensated for such breach.

Section 554.2318 provides in pertinent part:

> *Third party beneficiaries of warranties express or implied.* A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by

the goods *and* who is *injured* by breach of the warranty.

(Emphasis added.)

■ Plaintiffs' reliance on this provision is not well taken, however, because they have incurred only economic losses. Section 554.2318 does not extend its warranty protection to third party beneficiaries who have suffered only economic loss, because the term "injured" has been interpreted by this court to include only *"physical harm* to the plaintiff or his property." *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881, 885 (Iowa 1983) (emphasis in original).

■ We conclude, therefore, that plaintiffs are not entitled to maintain a breach of warranty action under section 554.2318 as a matter of law because they have not suffered physical harm to their person or property.

III. *Public nuisance theory.* Plaintiffs assert here for the first time that they should be able to recover on a public nuisance theory. They also say that under "notice pleading," Iowa R.Civ.P. 69(a), the public nuisance theory would be contained in their pleading of negligence by defendant. We need not, however, address the issue of whether plaintiffs have preserved error on the newly asserted public nuisance theory because such theory provides no relief to plaintiffs on the facts of this case.

Plaintiffs' contention that the law of public nuisance is controlling in this case is based on a recent bridge closing case. In *Stop & Shop Companies, Inc. v. Fisher,* 387 Mass. 889, 444 N.E.2d 368 (1983), on appeal from the trial court's sustention of defendant's motion to dismiss for plaintiff's failure to state a cause of action, the Massachusetts Supreme Judicial Court held that the negligent obstruction of a public bridge constituted a public nuisance which could support a claim for severe economic harm, as special and peculiar damages, resulting from loss of access to an established business's premises by its customers. The court expressed no opinion as to the merits of plaintiff's claim but did lay the legal foundation upon which plaintiff's claim would be analyzed:

The question is admittedly one of policy; at what point should the tortfeasor's liability stop. We recognize the wisdom of the general rule which denies recovery for negligently caused economic harm. However, not all negligent acts give rise to a public nuisance, or more particularly, to an obstruction of a public way. In light of the degree of harm required for an obstruction to amount to a public nuisance, and the dependence of businesses and their customers on access to business establishments, we conclude that recovery may be warranted in some cases.

The plaintiff must suffer *special pecuniary harm* from the loss of access. *Severe pecuniary loss is usually a special type of harm, but if a whole community suffers such loss, then it becomes a public wrong and the plaintiff cannot recover. Thus, the question becomes whether so many businesses have suffered the same economic harm that the plaintiff's damages are no longer special.*

. . . .

. . . In public nuisance claims we now decide that, absent physical harm or immediate or direct loss of access to the plaintiff's property, relief is warranted only where the plaintiff has suffered *special pecuniary harm* and substantial impairment of access.

444 N.E.2d at 373–74 (emphasis added) (citations omitted).

The record does not support even a slight inference that special damages are present in this case. Plaintiffs' petition affirmatively expresses the absence of special damages when it sets forth this case as a class action:

Plaintiffs bring this action on behalf of themselves and all other owners, operators and employees of restaurants, bars, motels and other retail establishments in South Sioux City, Nebraska and Sioux City, Iowa similarly situated. This class is so numerous that joinder of all members is impracticable.

The fact that plaintiffs assert this claim on behalf of the entire retail business communities of South Sioux City, Nebraska, and Sioux City, Iowa, implies that whatever damages have been suffered by plaintiffs have also been suffered by the entire business community and, therefore, such damages are *public* in nature rather than *special.*

Plaintiffs' reliance on Iowa public nuisance law on road closings is also misplaced. Plaintiffs cite *Miller v. Schenck,* 78 Iowa 372, 43 N.W. 225 (1889); *Brant v. Plumer,* 64 Iowa 33, 19 N.W. 842 (1884); and *Park v. The C. & S.W.R. Co.,* 43 Iowa 636 (1876), for the proposition that "Iowa has long recognized that one who has obstructed a highway or street is liable to persons whose business income suffers thereby." These cases, however, are clearly distinguishable from this case in that each of them involved a defendant who *intentionally* obstructed the public roadway which resulted in *special damages* to each of the plaintiffs. These cases clearly support the proposition that a person must suffer *special damages* in order to maintain a public nuisance action:

But, to entitle plaintiff to recover, it was incumbent on him to prove, in addition to [the existence of the highway, and of the obstruction thereof by plaintiff], that he had sustained some *special damage* or *injury, which was not shared by the public generally.* That he could not maintain an action for damages without proof of such *special injury* is clear on principle, and is well settled by the authorities.

*Brant v. Plumer,* 64 Iowa at 35, 19 N.W. at 843 (emphasis added). *See also Park v. The C. & S.W.R. Co.,* 43 Iowa at 638.

■ We conclude, therefore, that plaintiffs are not entitled to maintain a public nuisance action based on the fact that they have not suffered special damages.

■ We affirm the district court's sustention of defendant's motion for summary judgment based on our conclusions under this record that plaintiffs are not entitled to maintain an action against defendant for negligence, breach of warranty, or public nuisance. Our holding, however, only ap-

plies to the named plaintiffs because the record does not show the court had yet certified this action as a class action pursuant to Iowa R.Civ.P. 42.

■ We note that the certified cost for printing the defendant's brief exceeds the amount allowable under Iowa R.App.P. 16(c). The clerk shall not tax as costs an amount in excess of that permissible under the rule.

AFFIRMED.