Joseph MANNING and La Verne Manning, Plaintiffs/Cross-Appellants,

v.

INTERNATIONAL HARVESTER COMPANY, Defendant/Appellant,

and

Kunau Implement Company, Defendant/Appellee.

No. 84–1820.

Court of Appeals of Iowa.

Nov. 26, 1985.

Craig A. Levien and Vicki L. Seeck, of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for defendant/appellant.

Edward J. Kross, of Shaff, Farwell & Senneff, Clinton, for plaintiffs/cross-appellants.

Allan W. Vestal and Patrick M. Roby, of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for defendant/appellee.

Heard by OXBERGER, C.J., and SNELL, and SACKETT, JJ.

OXBERGER, Chief Judge.

The defendant International Harvester has appealed from the trial court's award of damages to plaintiffs. Plaintiffs have cross-appealed from denial of recovery from defendant-seller Kunau, and claiming the theory of breach of implied warranty was proven. We affirm the trial court.

The plaintiffs, Laverne Manning and his son, Joseph, purchased an International Harvester 800 Series planter from defendant Kunau Implement Company in the summer of 1980. The planter was ordered to be equipped with a 36-hole seed drum. The planter was delivered in spring of 1981 and Kunau's employees did the necessary set-up work and delivered the planter. The drum was already placed on the machine when received by Kunau. Soon after he began planting, Joseph noticed the planting was not thick enough. He called Kunau and employees of the company came out to the farm and replaced the clutch on the machine. Manning continued to notice problems with the machine in the 1981 and 1982 season and the clutch was replaced several times. At the end of the 1982 planting season, when he had five acres left to plant, he again asked a Kunau employee to check the machine. The employee discovered for the first time there was a 24-hole drum on the machine instead of a 36-hole drum.

The Mannings brought this lawsuit alleging negligence on the part of International Harvester and Kunau. The court found at the end of trial that Kunau was not negligent, that the plaintiffs did not contribute to their damages, and that International Harvester was negligent. It awarded damages of $350 to Joseph Manning and $59,092 to Laverne Manning.

On appeal International Harvester says: (1) it was not negligent and the proof was insufficient to support the court's finding; (2) the plaintiffs contributed to their damages through their own negligence; (3) the damages cannot be awarded because they compensate purely economic loss rather than property loss; (4) there is insufficient proof of damages; and (5) damages are limited by the warranty accompanying sale of the machine. The plaintiffs assert: (1) they proved the theory of implied warranty and the court erred in not making a finding in their favor; (2) the court erred in not finding Kunau was negligent.

We review this appeal at law and will reverse only if there is no substantial evidence supporting the court's fact findings or if there was an error in the application of law. Iowa R.App.P. 4. The evidence is viewed in the light most consistent with the judgment. *RET Corporation v. Frank Paxton Co., Inc.*, 329 N.W.2d 416, 418–19 (Iowa 1983).

In the first question presented in its appeal, International Harvester claims the mere fact the wrong drum was found on the planter more than one year after delivery is insufficient proof of its negligence.

There was no showing the machine left the factory in that condition, the defendant continues, nor that any standard of care was breached. There was no defect which shows negligence.

The problem with the planter was not a defect, plaintiff points out, but that the wrong part was sent. The duty was to deliver what was ordered, and to inspect properly the machine to assure it was what he wanted, Manning says. Probable cause is proven by the fact the drum was installed at the factory, and although it was set up by Kunau, this did not include checking or changing the drum. The evidence further shows the machine was used by the plaintiffs as it was delivered.

■ We hold the finding of the court that International Harvester was negligent is supported by substantial evidence.

■ In determining whether a plaintiff contributes negligently to the damages they have suffered, we look at their conduct in light of the actions of the ordinarily prudent person. *King v. Barrett*, 185 N.W.2d 210, 213 (Iowa 1971). Manning communicated with Kunau nineteen times during the time he was having trouble with the planter, and each time the machine was serviced or the clutch replaced, he was assured he would have no further problems and the difficulty had been corrected. The court's finding that Manning was not negligent in failing to discover the wrong seed drum had been placed on the planter is supported by the evidence.

Both plaintiffs and defendant agree that the holdings of the court indicate recovery cannot be allowed for purely economic losses in a tort action. This was stated in *Nebraska Innkeepers v. Pittsburgh-Des Moines Corporation*, 345 N.W.2d 124, 126 (Iowa 1984) and *Van Wyk v. Norden Laboratories, Inc.*, 345 N.W.2d 81, 88 (Iowa 1984). The defendant says the losses here were purely economic, while the plaintiff says the court was correct in allowing the damages since they are direct damage to property.

In *Nebraska Innkeepers* businesses affected by the closing of a bridge brought suit against the contractor and seller of the steel used in the bridge. *Nebraska Innkeepers*, at 125. They had lost profits because the improperly made steel had cracked, causing closing of the bridge and fewer customers. *Id.* The court compared the situation to that in the *Kinsman* cases, where those remotely affected by the pile-up of a ship into a bridge could not recover. *Id.* at 127. In the *Kinsman* case as well as *Nebraska Innkeepers*, the court found the economic, nonphysical losses of the business were too remote. *Id.* at 128–29. The court explained the reason for the distinction between economic and property losses:

Courts which have addressed this issue have repeatedly expressed concern that a contrary rule would open the door to virtually limitless suits, often of a highly speculative and remote nature. Such suits would expose the negligent defendant to a severe penalty, and would produce serious problems in litigation, particularly in the areas of proof and apportionment of damages.

*Id.* at 127. The court agreed with the finding by a court in another jurisdiction that the injured party must have at least some ownership or property interest, adding "allowance of a claim for purely economic damages arising from another's negligent actions would 'enter a field that has no just or sensible stopping point.'" *Id.* at 128.

In *Van Wyk* the court found the damages shown were not purely economic. *Van Wyk*, at 88. There, the cattle owner had suffered damage when his cattle died or became sick after being vaccinated. *Id.* at 83. The court distinguished the situation from *Nebraska Innkeepers*, pointing out the damage was "based on injury to their own property, the cattle." *Id.* at 88.

■ We believe that when distinguishing between economic loss and property damage which will allow compensation the reason for the distinction must be kept in mind. The court emphasizes that there must be a closer connection between the

injured party and the defendant than tangential economic losses. The plaintiff must own the property. This situation is unlike that of *Nebraska Innkeepers* where the plaintiffs are only tenuously connected to the cause of action. Here the plaintiff owned the crop and was directly damaged because his crop was not as large as it should have been. Simply because the damage is measured in terms of potential sale of the crop if it had grown as it should does not automatically mean that the damage is economic. Damages for loss of cattle would also be measured in terms of the amount of money they would have brought if sold for slaughter. *See, e.g., Denman v. Armour Pharmaceutical Co.*, 322 F.Supp. 1370, 1373 (N.D.Miss.1970). We agree with the trial court that the damage suffered by the plaintiff to his crop was property damage and not the indirect purely economic damage of the type condemned in *Nebraska Innkeepers* and *Van Wyk*.

Defendant also attacks the proof of damages, contending that use of the plaintiff's tax returns is insufficient evidence. Further, no proof was made of savings to the plaintiff because of extra costs not incurred since the crop was not as large as it otherwise would have been.

 The proper method of measuring crop damage is the difference between the value the crop should have had and the value actually obtained, less any expenses. *Martin v. Jaekel*, 188 N.W.2d 331, 336 (Iowa 1971). According to the tax returns from 1980 through 1982, corn sales in 1980 for LaVerne Manning were $106,996, $73,792 in 1981, and $68,725 in 1982. The testimony also supports the conclusion that 15,000 bushels of corn were lost in 1981 because of the improperly assembled planter, and another 14,250 lost in 1982. With experts testifying corn prices in the county for 1981 varied from $2.38 to $2.60 per acre, maximum loss would be $39,000 and minimally would be $35,700 for that year. In 1981 prices were between $1.99 to $2.48 per bushel, with a minimum loss of $28,357, and a maximum of $35,340. This evidence shows a minimum total loss for LaVerne of

$64,057. The court awarded somewhat less than this, $59,020. Joseph Manning's tax returns showed previous corn sales of $700 prior to using the planter. With a one-third reduction in yield, the court's finding of a loss of $350 is supported by this evidence.

Although some costs were saved because the crop was smaller, additional costs were incurred because nitrogen was applied to the crop with the expectation of a yield which would be generated using a 36-hole seed drum. Since there was too much nitrogen absorbed by the plants, a longer time was required to dry it, at a cost of $5,000.

We find the court's conclusions regarding the amount of damages supported by substantial evidence.

International Harvester asserts on appeal that the court should have found that damages are limited by warranty to repair or replacement of defective parts. Specifically, the warranty indicated International Harvester will:

> Replace or repair any part or parts of your new International Harvester agricultural product or outdoor power product which are defective in material or workmanship without charge for either parts or labor during the first year following delivery to you.
>
> . . .
>
> This warranty is in lieu of all other warranties, express or implied. Warranties of merchantability and fitness for a particular purpose are excluded, as are all other representations to the user—purchaser, and all other obligations or liabilities, including liability for incidental and consequential damages, on the part of the company or seller.

 It is possible for a disclaimer to limit liability for negligence. The Iowa court specifically stated this, adding that it is not against public policy to contract to exempt liability. *Weik v. Ace Rents Incorporated*, 249 Iowa 510, 515, 87 N.W.2d 314, 317 (1958). This principle was recognized by the Eighth Circuit in a later case in

which it interpreted Iowa law on the subject. *Northern Natural Gas Co. v. Roth Packing Co.*, 323 F.2d 922 (8th Cir.1963). The court stated that rather than being against public policy, public policy is furthered by permitting the freedom to contract. *Id.* at 928.

However, the courts discussing Iowa law on this point specifically note that where the limitation language is ambiguous and the contract must be examined to determine its true meaning, such contracts will be strictly construed against the party claiming relief from liability. *Laverty, Inc. v. Mel Jarvis Construction Co., Inc.*, 513 F.2d 1307, 1309 (8th Cir.1975); *Northern Natural Gas Co. v. Roth Packing Co.*, at 926; *Iowa Electric Light & Power Co. v. Allis-Chalmers Manufacturing Co.*, 360 F.Supp. 25, 33 (S.D.Iowa 1973); *Weik*, 249 Iowa at 515, 87 N.W.2d at 317.

Here, International Harvester attempts to rest its claim that liability is limited on the phrase "all other obligations or liabilities, including incidental and consequential damages." Yet this language was used in a sentence referring to warranties, not negligence. Further, earlier language in the retail order states:

Limitations On Our Responsibility

Please carefully note that this is a two-way agreement. We promise to make free repairs or replacements as stated, but you agree that except for our obligation to make good on this promise we shall not be responsible for any expenses or inconvenience which you might incur or experience with respect to our product, nor shall we be liable for defects, damage, or failures caused *by unauthorized alterations, unreasonable use, accident, or abuse, including failure to provide reasonable and necessary maintenance,* after our product has been delivered to you. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

(emphasis added). This would lead a person reading the retail order to conclude the limitation on consequential damages refers only to where the product is misused or inappropriately maintained. It is far from unambiguous. It does not contain the clear limitation of negligence liability found at *Iowa Electric*, at 33, or *Fire Association of Philadelphia v. Allis-Chalmers Manufacturing Co.*, 129 F.Supp. 335, 343 (N.D. Iowa 1955).

■ The trial court did not originally rule on the issue of whether the disclaimer limited damages to the Mannings. International Harvester requested the court consider the argument in its 179(b) motion, which the court handled in a general denial. We find our review of the case law on point shows that the "limitation" is not effective in restricting the damages to repair or replacement of the drum.

An alternative theory was urged by the Mannings of breach of implied warranty of merchantability, allowed generally under section 554.2314 of the Code. The court also did not address the issue in its ruling, but the plaintiffs have presented it on appeal. The plaintiffs did not ask the court to reconsider this question through a motion to enlarge or amend the findings of fact and conclusions of law on this point, although they addressed other issues with a 179(b) motion. When the trial court is not requested to rule through a 179(b) motion on a legal point or fact finding it has not addressed, there is nothing presented for this court to review. *Economy Forms Corporation v. City of Cedar Rapids*, 340 N.W.2d 259, 265 (Iowa 1983); *Nowlin v. Scurr*, 331 N.W.2d 394, 396 (Iowa 1983); *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 195 (Iowa 1980); *Fjelland v. Wemhoff*, 249 N.W.2d 634, 638 (Iowa 1977). We do not address this issue on appeal.

■ Finally, plaintiffs have claimed that the court erred in finding Kunau was not negligent in failing to discover the improper drum was placed on the planter until nearly two years after it was delivered.

The court made a number of fact findings in this regard which are supported by substantial evidence. The seller ordered the planter with a 36-hole drum, not a 24-hole drum. The planter was delivered to Kunau already assembled, with the 24-holed drum in place. Kunau employees had no reason to know the planter had a wrong drum in place. Most important, the problems that Manning was having with the planter would lead the employees to believe the problem was with the clutch on the machine. This type of planter typically had a problem with sticking clutches. Such a problem causes the seed drum to stop its rotation and start again with jerking or jumping. Manning told the employees he had problems with the clutch jumping and that the seed drum was jumping. We agree with the trial court that Kunau Implement Company was not negligent.

Accordingly, we affirm the trial court's findings that International Harvester was negligent and that the plaintiffs were not negligent. We find the damages are not limited to replacement or repair. The trial court is affirmed in its finding that the Kunau company is not negligent. We do not address the issue of whether the theory of implied warranty of merchantability was proven.

AFFIRMED.